VILLAGE OF WIND POINT, Respondent, v. HALVERSON and wife, Appellants.

*January 8—January 30, 1968.*

4

For the appellants there was a brief and oral argument by *James Wilbershide* of Racine.

For the respondent there was a brief by *Foley, Capwell & Foley,* and oral argument by *Rex Capwell* and *Garth R. Seehawer,* all of Racine.

ROBERT W. HANSEN, J.   The question presented in this case is: Upon the agreed statement of facts, is the village of Wind Point entitled to an injunction which will prohibit defendants from proceeding with construction of a swimming pool building in violation of the setback re-

quirements of sec. 8.02 (4), municipal code of the village of Wind Point, and which will require defendants to remove such building or alter it to conform with the requirements of said ordinance? The trial court answered in the affirmative.

As is often the case, the answering of the single, submitted questions requires the framing and answering of several subquestions.

*Is the village estopped in the enforcement of the ordinance by the erroneous issuance of a building permit by its building inspector?*

The trial court answered: "No," holding that "the village is not bound in an action of this kind by the errors, however sincere, of its officials, particularly where the permit was secured with full knowledge on the part of the applicant that the intended improvement violated the setback restrictions." We concur.

The village is not estopped from the enforcement of the ordinance by the building inspector's erroneous issuance of an illegal building permit. Recently, this court stated:

"Thus when the city acts to revoke such an illegal permit it is exercising its police power to enforce the zoning ordinance for the protection of all citizens who are being injured by the violation, and not to protect some proprietary interest of the city. These citizens have a right to rely upon city officials not having acted in violation of the ordinance, and, when such officials do so act, their acts should not afford a basis for estopping the city from later enforcing the ordinance. This is true regardless of whether or not the holder of the illegal permit has incurred expenditures in reliance thereon." *Milwaukee v. Leavitt* (1966), 31 Wis. 2d 72, 78, 142 N. W. 2d 169.

Both the reasoning and the result apply to the action brought by the village of Wind Point to enforce its ordinance, regardless of whether the ordinance is viewed

as a zoning ordinance or an ordinance enacted pursuant to the police power.

*Is the ordinance involved valid as a zoning ordinance?*

The trial court answered: "No," giving as its reason that "The plaintiff's zoning ordinance contains no provision which could be construed as complying with the seemingly mandatory language [of sec. 62.23 (7) (e), Stats.]." We concur.

If the Wind Point village ordinance is considered as a zoning ordinance, it is invalid because the village failed to comply with the requirements of sec. 62.23 (7) (e), Stats., providing:

"(e) *Board of Appeals.* 1. The council which enacts zoning regulations pursuant to this section shall by ordinance provide for the appointment of a board of appeals, and shall provide in such regulations that said board of appeals may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."

This statutory requirement for enactment of zoning regulations is made applicable to villages by sec. 61.35, Stats., providing:

"61.35 **Village Planning.** The provisions of sec. 62.23 shall apply to villages, and the powers and duties conferred and imposed by said section upon mayors, councils and specified city officials are hereby conferred upon presidents, village boards, and village officials performing duties similar to the duties of such specified city officials, respectively."

It is undisputed that the village board in Wind Point has not provided for the establishment and appointment of a board of appeals, empowered to grant variances,

make special exceptions and provide a forum for initial hearings on requests for adjustment of zoning regulations. Villages are granted both the powers and duties granted by the legislature to enact zoning regulations. The duties involved clearly include the requirement that a board of appeals be appointed as a prerequisite or accompanying enactment if zoning regulations are to be adopted. This court's ruling was "Zoning power is conferred upon cities and villages by sec. 62.23 (7), Stats., made applicable to villages by sec. 61.35." *State ex rel. Lake Drive Baptist Church v. Bayside Village Board* (1961), 12 Wis. 2d 585, 594, 108 N. W. 2d 288. Neither a city nor a village in Wisconsin may enact zoning regulations unless they also establish a board of appeals. The zoning enabling statute, applicable to both, requires just that.

*Is the ordinance involved valid under the general*
*or police powers of a village?*

The trial court answered: "Yes," ruling that ". . . even though the ordinance cannot be sustained as a zoning ordinance, it [the village] may enact the restrictions here material under sec. 61.34 (1) and (5), Wisconsin Stats., which deal with the general grant of village powers." We concur.

Sec. 61.34, Stats., deals with the powers of a village board, subs. (1) and (5) providing:

"(1) GENERAL GRANT. Except as otherwise provided by law, the village board shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall

be in addition to all other grants and shall be limited only by express language."

"(5) CONSTRUCTION OF POWERS. For the purpose of giving to villages the largest measure of self-government in accordance with the spirit of home rule amendment to the constitution it is hereby declared that chapter 61 shall be liberally construed in favor of the rights, powers and privileges of villages to promote the general welfare, peace, good order and prosperity of such villages and the inhabitants thereof."

The only portion of the village code that is in the record and before the court is ch. 8, entitled "Building Restrictions." It provides for the appointment of a building inspector, creation of a building board, and appeals to the village board in certain situations not present here. The ordinance before the court appears to be a building restriction, part of a building code.

The dividing line between a zoning regulation and a building code regulation is not easily drawn. These are two closely related facets of police power regulation. Both are designed to promote public safety, health and welfare.

Authorities agree that there is a difference between building codes and zoning ordinances, but do not agree on the exact difference. One author defines the distinction in these words:

"Zoning ordinances prescribe the permitted and prohibited uses of land within the particular district. Building and housing codes and ordinances, on the other hand, have a more restrictive application to the use of lawfully existing buildings within zoned areas, and reach a field of regulation with respect to the construction and maintenance of buildings lawfully situated in a zoned area, as such construction and maintenance relate to the comfort, health and safety of those who occupy such buildings." 3 Yokley, *Zoning Law and Practice* (3d ed.), p. 137, sec. 25–1.

Another writer in the field states that it is quite common for a municipality to have both a zoning ordinance and a building code and states:

"Ordinarily setback or building lines are established under the police power or under the zoning power which is, of course, usually a phase of the police power." 8 McQuillin, *Municipal Corporations* (1965 rev. ed.), p. 441, sec. 25.138.

In its decision, the trial court quotes, on the exact point involved, another leading author in the field of municipal corporations law who states:

"Municipal ordinances requiring yards, side yards and rear yards are generally sustained [pursuant to police power] as tending to ensure proper light and air and reducing fire hazards." 1 Antineau, *Municipal Corporation Law*, sec. 6.54.

There is no doubt that an ordinance requiring setback lines can be validly enacted by a city or village as a zoning ordinance pursuant to sec. 62.23 (7), Stats. This court has sustained a 15-foot setback requirement as a valid zoning ordinance. *Hayes v. Hoffman* (1927), 192 Wis. 63, 211 N. W. 271. Zoning ordinances requiring homes to have a minimum square footage of floor space have also been upheld. *State ex rel. Saveland Park Holding Corp. v. Wieland* (1955), 269 Wis. 262, 69 N. W. 2d 217.

We hold that a setback ordinance may also be adopted by a city or village other than by adopting a zoning ordinance, as a building restriction or part of a building code, pursuant to the general grant of power in sec. 61.34 (1), Stats. This court has liberally construed the power of a city or village to enact building regulations pursuant to the general grant of police power, stating:

"The city's police power with respect to enacting building regulations is not restricted to situations which only affect the public health and safety, but extends to anything which is for the good order of the city or the public welfare. Sec. 62.11 (5) Stats. The prohibition of a condition that tends to depress adjoining property values falls within the scope of promoting the general welfare and does not violate due process." *Boden v. Milwaukee* (1959), 8 Wis. 2d 318, 325, 99 N. W. 2d 156.

The rationale of the decision applies to villages enacting building regulations and setback requirements under their general grants of police power in sec. 61.34 (1), Stats.

*May the village enjoin the violation of the*
*ordinance here involved?*

The trial court answered: "Yes," finding that ". . . In this case, it has not been made to appear that the defendants are subjected in the application of the ordinance to any special, arbitrary, or unreasonable restraint and in the absence thereof they are obliged to comply with the restriction." The majority of the court disagree ruling that the village may not enjoin the violation of an ordinance not enacted pursuant to sec. 62.23 (7), Stats., when the violation does not constitute a nuisance per se or threaten to destroy property rights.

In its complaint, the village of Wind Point states that its action is brought in accordance with the provisions of sec. 62.23 (7) (f) and (8), Stats.

Sec. 62.23 (7) (f) 2, Stats., provides as follows:

"In case any building or structure is or is proposed to be erected, constructed, reconstructed, altered, converted or maintained, or any building, structure or land is or is proposed to be used in violation of this section or of any ordinance or other regulation made under authority conferred hereby, the proper authorities . . . may, in addition to other remedies, institute appropriate action or proceedings to prevent such unlawful erection, construction, reconstruction, alteration, conversion, maintenance or use . . . ."

Sec. 62.23 (8), Stats., provides as follows:

"Any building erected, constructed or reconstructed in violation of this section or regulations adopted pursuant thereto shall be deemed an unlawful structure, and the building inspector or city attorney or other official designated by the council may bring action to enjoin such

erection, construction or reconstruction, or cause such structure to be vacated or removed. . . ."

It is clear that each of these provisions for injunctive relief apply only to violations of ordinances enacted pursuant to sec. 62.23, Stats. The language is clear, the meaning unmistakable. We have determined that sec. 8 of the village ordinance was not, in fact, enacted pursuant to sec. 62.23. It follows that the relief provided by the above sections is not available to the village in seeking enforcement of said ordinance. If the ordinance must stand outside of sec. 62.23 in order to be given validity, then it stays outside as to any rights or relief given by the legislature for enforcement of ordinances enacted pursuant to sec. 62.23. Sec. 62.23 (7) (f) and (8) do not apply to ordinances enacted under sec. 61.34.

In the area of some general right to seek injunctive relief to aid in enforcing an ordinance enacted under its grant of police power, the village is subject to the established rule in Wisconsin that, unless an act is established to be a nuisance per se or threatens to destroy property rights, an injunction will not issue to aid its enforcement of the ordinance. This court has said:

". . . the remedy of injunction is not ordinarily available for the mere violation of a municipal ordinance. This relief does not appear ever to have been granted except where the violation amounted to a nuisance *per se*." *Caeredes v. Platteville* (1933), 213 Wis. 344, 353, 251 N. W. 245.

Other cases reiterate that a municipality is not entitled to equitable relief to enforce its ordinances in the absence of a specific enabling statute unless there is a showing that such violation constitutes a nuisance. See *Miller v. Foster* (1943), 244 Wis. 99, 11 N. W. 2d 674; *Holzbauer v. Ritter* (1924), 184 Wis. 35, 198 N. W. 852. In the *Miller Case*, which involved a building code violation, the court reiterated the rule but allowed an injunction to issue because property rights were threatened with de-

struction. No such emergency exigency exists in this case. Nor does the village contend that the construction of the appellant's building constitutes a nuisance.

On the question of whether injunctive relief should be obtainable to enforce an ordinance where there is no specific statutory authority, the most persuasive argument advanced by counsel for the village is that, at the time of the decision in *Miller, supra,* the legislative grant of power to local governmental units was limited to ". . . impose fines, imprisonment, confiscation, and other necessary means." He cites the present home-rule statutes (sec. 62.11 (5) for cities; 61.34 (1) for villages, both having identical language), particularly the provision that a village board ". . . may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language." He contends that the power of "suppression" of violations is without meaning if it does not include the right to seek injunctive relief against a violator of a building restriction. The argument is given weight by the construction of powers subsection (sec. 61.34 (5)) stating that "For the purpose of giving to villages the largest measure of self-government in accordance with the spirit of the home rule amendment to the constitution . . . ." Ch. 61 is to be "liberally construed in favor of the rights, powers and privileges of villages to promote the general welfare, peace, good order and prosperity of such villages and the inhabitants thereof." Actually, on this point, the village has convinced the writer of this opinion but no one else on the court so the ruling is that, in the absence of a showing of a nuisance or threatened injury to property, the village is not entitled to injunctive relief to aid in enforcement of sec. 8.02 (4) of its municipal code.

*By the Court.*—Judgment reversed and injunction denied.