Loran B. ZWIEFELHOFER, William J. Schindler, Glenn R. Sarauer and Samuel R. La Gesse, Plaintiffs-Respondents,

v.

TOWN OF COOKS VALLEY, a Wisconsin quasi-municipal corporation, Defendant-Appellant.

Supreme Court

*No. 2010AP2398. Oral argument December 2, 2011.*
*—Decided February 8, 2012.*

2012 WI 7

(Also reported in 809 N.W.2d 362.)

488

490

For the defendant-appellant there were briefs filed by *Joe Thrasher* and *Thrasher, Pelish, & Franti, Ltd.,* Rice Lake, and oral argument by *Joe Thrasher.*

For the plaintiffs-respondents there was a brief filed by *William G. Thiel* and *Weld, Riley, Prenn, & Ricci, S.C.,* Eau Claire, and oral argument by *William G. Thiel.*

An amicus curiae brief was filed by *Carol B. Nawrocki,* Shawano, for Wisconsin Towns Association; *Thomas D. Larson,* Madison, for Wisconsin Realtors Association and the Wisconsin Builders Association; *Charles V. Sweeney, Mitchell R. Olson* and *Axley Brynelson, LLP,* Madison, for Aggregate Producers of Wisconsin, Inc. and Wisconsin Transportation Builders Association, Inc; *Matthew J. Duchemin, Matthew D. Fortney* and *Quarles & Brady, LLP,* Madison, for Preferred Sands of Minnesota, LLC; and *Daniel M. Olson,* Madison, for the League of Wisconsin Municipalities.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J.    Loran B. Zwiefelhofer, William J. Schindler, Glenn R. Sarauer,

and Samuel R. La Gesse, the plaintiffs, are residents of the Town of Cooks Valley. They brought a declaratory judgment action against the Town of Cooks Valley (the Town) in the Circuit Court for Chippewa County, James M. Isaacson, Judge, to declare the Town's Nonmetallic Mining Ordinance (the Ordinance) invalid.

¶ 2. The complaint alleges that each of the plaintiffs owns land in the Town, has engaged in nonmetallic mining in the past, and may wish to engage in nonmetallic mining operations on their land in the future. The plaintiffs contend that the Ordinance is a zoning ordinance that is invalid because it does not have county board approval. If the Ordinance is not a zoning ordinance, county board approval is not required.

¶ 3. The circuit court granted summary judgment in favor of the plaintiffs, and the Town appealed.[1] The court of appeals certified the appeal to this court pursuant to Wis. Stat. (Rule) § 809.61 (2009–10).[2]

¶ 4. The appeal presents a single issue: Is the Town's Nonmetallic Mining Ordinance a zoning ordinance?

■

¶ 5. Zoning ordinances are enacted pursuant to a local government's police power.[3] "Although zoning or-

---

[1] The circuit court concluded that the Ordinance is a zoning ordinance because it "covers the immediate use of land" and "is a pervasive regulation of the use of land." The circuit court relied largely on *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Commission,* 178 Wis. 2d 74, 503 N.W.2d 265 (1993), which was overruled by *Wood v. City of Madison,* 2003 WI 24, 260 Wis. 2d 71, 659 N.W.2d 31.

[2] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[3] *See* 8 Eugene McQuillin, *The Law of Municipal Corporations* § 25.11 (3d ed. 2010) ("Zoning laws in their usual form are

dinances are enacted under a municipality's police power, all ordinances enacted under the police powerare not zoning ordinances."[4] Zoning ordinances and non-zoning ordinances that are enacted pursuant to a local government's police power thus inhabit closely related spheres. The court has declared that a zoning ordinance

an exercise of the police power . . . . [T]he police power . . . remains the wellspring from which the power to plan and zone flows.").

Wisconsin's zoning enabling act, Wis. Stat. § 62.23(7)(a), describes the grant of zoning power to the local government as follows: "For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by ordinance . . . the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes . . . ."

Wisconsin Stat. § 61.34(1) prescribes a local government's police powers as follows:

[The local government] . . . shall have power to act for the government and good order of the [local government], for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.

Police power has been described as follows: "The very existence of government renders imperative a power to restrain the individual to some extent. This is called the 'police power' . . . . It may be described, though not defined, as the power of the government to regulate conduct and property of some for safety and property of all." *State ex rel. Zillmer v. Kreutzberg,* 114 Wis. 530, 533, 90 N.W. 1098 (1902), *quoted with approval in State v. Cole,* 2003 WI 112, ¶ 25, 264 N.W.2d 520, 665 N.W.2d 328.

[4] *Heitman v. City of Mauston Common Council,* 226 Wis. 2d 542, 556, 595 N.W.2d 450 (Ct. App. 1999) (Dykman, P.J., dissenting).

and a building code enacted pursuant to the police power "are two closely related facets of police power regulation. Both are designed to promote public safety, health and welfare."[5]

¶ 6.  Despite the similarity and potential overlap between zoning ordinances and non-zoning police power ordinances, the legislature imposes different procedural requirements on these two forms of ordinances.[6]

¶ 7.  Although the constitutionality of zoning, as a general matter, has long been settled,[7] the heightened procedural requirements on zoning ordinances are often justified because zoning runs the risk of unduly infringing on individuals' property rights.[8] In the present case, the additional procedural requirement of

[5] *Village of Wind Point v. Halverson*, 38 Wis. 2d 1, 8, 155 N.W.2d 654 (1968).

[6] *See* 1 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning*, § 1:10 (2011):

The importance of distinguishing between a restriction contained in an ordinance enacted pursuant to general or specific authority relating to such type of restriction, and between the same restriction enacted as part of a zoning ordinance usually involves the formalities by which it was enacted. When contained in, and as part of, a zoning ordinance, it must have been enacted pursuant to and in accordance with the legislatively prescribed procedures for enacting zoning ordinances and amendments thereto.

[7] *See Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926).

[8] *See* 1 Ziegler, *supra* note 6, § 1:2 ("Zoning at first was considered one of the most radical departures from the traditional concepts of private property because it was perceived as prohibiting a citizen from devoting his property to a purpose useful and entirely harmless, in the ordinary sense, in certain districts within a community.").

county approval may also be justified by the need to avoid a conflicting web of county and town zoning ordinances.

¶ 8. In determining whether the Ordinance is a zoning ordinance, we do not create or apply a bright-line rule governing what constitutes a zoning ordinance and do not establish or apply an all-encompassing definition of a zoning ordinance. Rather, we determine whether the Ordinance is a zoning ordinance using a functional approach. We catalogue the characteristics of traditional zoning ordinances and the commonly accepted purposes of zoning ordinances. We then compare the characteristics and purposes of the Ordinance to the characteristics and purposes of traditional zoning ordinances to determine whether the Ordinance should be classified as a zoning ordinance.

¶ 9. No single characteristic or consideration is dispositive of the question whether the Ordinance is a zoning ordinance. Nor may a court simply add up the number of similarities a challenged ordinance has to traditional zoning ordinances or the number of differences a challenged ordinance has from traditional zoning ordinances to determine whether a challenged ordinance is a zoning ordinance. Some characteristics, under the circumstances of the case, may be more significant than others.

¶ 10. With that said, we have scrutinized the Ordinance in light of the characteristics and purposes of traditional zoning ordinances and conclude that, despite having some similarities to traditional zoning ordinances, the Ordinance is not to be classified as a zoning ordinance. The Ordinance is a non-zoning ordinance adopted under the Town's police power. Accordingly, the

497

ordinance did not need county board approval, and we reverse the judgment of the circuit court.

I

¶ 11. The facts relevant to this appeal consist primarily of the contents of the Ordinance.

¶ 12. The Town adopted the Ordinance at a public Town Board meeting on December 17, 2008, after discussing the Ordinance at a series of public meetings beginning on June 20, 2008.

¶ 13. The Ordinance begins with a preamble, which states the purposes of the Ordinance and explains that it is adopted pursuant to the Town's village and police powers:

> The purpose of this subchapter is to promote the health, safety, prosperity, aesthetics and general welfare of the people and communities within the Town and set forth the rules and procedures for this municipality regarding nonmetallic mines within the Town. This ordinance is adopted pursuant to the Town's village and police powers under Wis. Stat. §§ 60.10(2)(c) & 61.34.

¶ 14. The Ordinance's preamble is followed by a statement of the Town Board's intent to regulate nonmetallic mines so as to, among other things, protect the health of residents:

> The general intent of this subchapter is to regulate the location, construction, installation, alteration, design, operation and use of all nonmetallic mines so as to protect the health of residents and transients; secure safety from disease and pestilence; further the appropriate use and conservation of land and water resources; preserve and promote the administration and enforcement of this subchapter and provide penalties for its violations.

498

¶ 15. The definition section of the Ordinance explains that "nonmetallic mining" refers to commercial sand and gravel pits, also known as open-pit mines, along with their associated activities, such as drilling, blasting, excavation, grading, and dredging. Various activities that result in minor or incidental removal of nonmetallic minerals are exempt under the Ordinance, such as the growing of commercial sod and agricultural crops.

¶ 16. The Ordinance then explains that a permit is required for the operation of a nonmetallic mine and sets forth the application process. The appendix to the Ordinance contains a detailed eight-page application, which the applicant must submit to the Town Clerk along with an application fee. The application is first considered by the Town Plan Commission and copies are distributed to all residents who own land adjoining the proposed site. The Town Plan Commission then makes a recommendation to the Town Board.

¶ 17. The Town Board considers the recommendation at a public meeting and takes comments from the public. The Town Board determines whether the application is complete; whether the "mine is in the best interests of the citizens of the Town, and will be consistent with the protection of public health, safety and general welfare;" and whether the applicant has received any required federal, state, and county permits. If these criteria are satisfied, the Town Board "shall grant the permit, either with or without conditions."

¶ 18. The Ordinance elaborates on the type of conditions that the Town may impose on nonmetallic mining "to protect public health and safety and promote the general welfare of the Town" as follows:

Such conditions may include, but are not limited to, restrictive provisions and proof of financial security for reclamation, restrictive provisions and proof of financial security for town road maintenance and repair,

499

restrictions on hours of operation, restrictions on truck routes on town roads, restrictions on truck and traffic volume into and out of the mine site, restrictions to protect groundwater quantity and quality, restrictions to safeguard public and private drinking and agricultural wells, restrictions to control air emissions and dust from the mine and its operations, and any other restrictions deemed necessary and appropriate . . . .

¶ 19.   Finally, the Ordinance exempts preexisting mines from the application and permit requirements. The Ordinance applies, however, to expansion of preexisting mines.

## II

¶ 20.   This appeal requires the court to interpret portions of Chapters 60, 61, and 62 of the Wisconsin Statutes and the Ordinance. Interpretation of a statute and an Ordinance presents a question of law that this court determines independently of the circuit court or court of appeals, benefiting from their analyses.[9]

## III

¶ 21.   We begin by providing background to explain why the plaintiffs' claim that the Ordinance is invalid hinges on whether the Ordinance is a zoning ordinance.

¶ 22.   Towns in Wisconsin possess those powers granted by statute and any powers that are necessarily implied from a power expressly provided by statute.[10] The powers that may be exercised at a town meeting

---

[9] *Wood,* 260 Wis. 2d 71, ¶ 11.

[10] *Town of Clearfield v. Cushman,* 150 Wis. 2d 10, 20, 440 N.W.2d 777 (1989).

are set forth in Wis. Stat. § 60.10. Relevant for our purposes, Wis. Stat. § 60.10(2)(c) provides that the town meeting may "[a]uthorize the town board to exercise powers of a village board under s. 60.22(3)." The Town adopted village powers in 2001 and the resolution has never been rescinded.

¶ 23. Wisconsin Stat. § 60.22(3), in turn, cross-refers to Chapter 61, which endows town boards with powers conferred on village boards under chapter 61. "If authorized under s. 60.10(2)(c), [the town board] may exercise powers relating to villages and conferred on village boards under ch. 61, except those powers which conflict with statutes relating to towns and town boards."

¶ 24. Chapter 61 grants a broad range of powers to villages. Its underpinning is the "home rule amendment," Wis. Const. Art. XI, § 3, adopted in 1924 to allow cities and villages greater control over their local affairs.[11] Wisconsin Stat. § 61.34 lists the powers of the village board, and Wis. Stat. § 61.34(5) states that "[f]or the purpose of giving to villages the largest measure of self-government in accordance with the spirit of [the

---

[11] Article XI, Section 3(1) provides: "Cities and villages organized pursuant to state law may determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of statewide concern as with uniformity shall affect every city or every village. The method of such determination shall be prescribed by the legislature."

The parties agree that the state legislature, if it so chose, could enact a uniform statewide law regulating nonmetallic mines, which might preempt the Town's Ordinance. The legislature has enacted Chapter 295 of the Wisconsin Statutes, entitled "Nonmetallic Mining Reclamation; Oil and Gas." *See also* Chapter NR 135 of the Wisconsin Administrative Code. No one argues this statute preempts the Ordinance.

home rule amendment] it is hereby declared that this chapter shall be liberally construed in favor of the rights, powers and privileges of villages to promote the general welfare, peace, good order and prosperity of such villages and the inhabitants thereof."

¶ 25. The police power of a village board is governed by Wis. Stat. § 61.34(1), which provides as follows:

> Except as otherwise provided by law, the village board shall have the management and control of the village property, finances, highways, streets, navigable waters, and the public service, and shall have power to act for the government and good order of the village, for its commercial benefit and for the health, safety, welfare and convenience of the public, and may carry its powers into effect by license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language.[12]

¶ 26. Also included in ch. 61 is Wis. Stat. § 61.35, entitled "village planning," which gives villages the power to zone by providing that Wis. Stat. § 62.23 (applicable to cities) applies to villages.

¶ 27. Finally, Wis. Stat. § 62.23(7) governs zoning. The grant of zoning power overlaps with the police power statute. The zoning statute provides in part as follows:

> (a) *Grant of power.* For the purpose of promoting health, safety, morals or the general welfare of the community, the council may regulate and restrict by

---

[12] For a similar provision governing cities, see Wis. Stat. § 62.11(5).

ordinance . . . the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, mining, residence or other purposes if there is no discrimination against temporary structures. This subsection and any ordinance, resolution or regulation enacted or adopted under this section, shall be liberally construed in favor of the city and as minimum requirements adopted for the purposes stated. This subsection may not be deemed a limitation of any power granted elsewhere.

(b) *Districts.* For any and all of said purposes the council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings and for the use of land throughout each district, but the regulations in one district may differ from those in other districts. . . .

(c) *Purposes in view.* Such regulations shall be made in accordance with a comprehensive plan . . . to promote health and the general welfare . . . . Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of the buildings and encouraging the most appropriate use of land throughout such city.

¶ 28.  The Town of Cooks Valley adopted village powers in 2001, pursuant to Wis. Stat. § 60.10(2)(c). Thus, by virtue of the statutes and the Wisconsin Constitution, the Town possesses the full panoply of powers enjoyed by villages, including police power and the more specific zoning power.

¶ 29.   There is an important limitation on the Town's zoning authority. If a town is located in a county that has enacted countywide zoning pursuant to Wis. Stat. § 59.69, the town may not adopt a zoning ordinance of its own unless it is approved by the county board.[13] The Town is situated in Chippewa County, which has enacted a countywide zoning ordinance. Although the Town is located in a county with a countywide zoning ordinance, the Town has not adopted the county's zoning ordinance. Thus, the Town may enact zoning ordinances, but the Town's zoning ordinances need the approval of the county board.

¶ 30.   The Town did not obtain the Chippewa County Board's approval in enacting the Ordinance.

■■

¶ 31.   Zoning power and police power are obviously closely related. Both serve the same overarching purpose of protecting the health, safety, and welfare of the community. Zoning power is a subset of the police power.[14] The question before us is whether the Town could adopt the Ordinance as a non-zoning police power ordinance.

---

[13] "In counties having a county zoning ordinance, no zoning ordinance or amendment of a zoning ordinance may be adopted under this section unless approved by the county board." Wis. Stat. § 60.62(3).

[14] *See* Wis. Stat. §§ 62.23(7)(a) (zoning), 61.34(1) (police power).

The parties seem to agree that the Town could have accomplished the goals of the Ordinance by adopting a zoning ordinance, because the zoning power allows the Town to "regulate and restrict by ordinance . . . the location and use of buildings, structures and land for . . . mining . . . ." The court has stated that simply because an ordinance could qualify as a zoning

IV

¶ 32. Various attempts have been made to distinguish between zoning ordinances and non-zoning police power ordinances.

¶ 33. A review of the case law and secondary sources purporting to distinguish between zoning ordinances and non-zoning police power ordinances reveals that identifying an ordinance as a zoning ordinance is not necessarily a simple task.[15] "[T]he line distinguishing general police power regulation from zoning ordinances is far from clear."[16]

ordinance does not mean it must be adopted as a zoning ordinance. *See Halverson*, 38 Wis. 2d at 9.

In determining whether an ordinance governing building setback requirements was a zoning ordinance, the court explained that "[t]here is no doubt that an ordinance requiring setback lines can be validly enacted by a city or village as a zoning ordinance pursuant to sec. 62.73(7)." *Halverson*, 38 Wis. 2d at 9. Nonetheless, the court concluded "that a setback ordinance may also be adopted by a city or village other than by adopting a zoning ordinance, as a building restriction or part of a building code, pursuant to the general grant of power in sec. 61.34(1)." *Halverson*, 38 Wis. 2d at 9.

Simply because an ordinance could be validly enacted as a zoning ordinance does not mean that zoning is necessarily the only avenue available for a local government to enact the regulation. We need not and do not address whether the Ordinance would qualify as a valid zoning regulation.

[15] *See Halverson*, 38 Wis. at 8 ("The dividing line between a zoning regulation and a building code regulation is not easily drawn. These are two closely related facets of police power regulation. Both are designed to promote public safety, health and welfare.").

[16] *See* 1 Ziegler, *supra* note 6, § 1:10. *See also* 8 McQuillin, *supra* note 3, § 25.11 (citing *Piper v. Meredith*, 266 A.2d 103 (N.H. 1970)) ("Whether . . . a particular law is a zoning measure

¶ 34. The Wisconsin Attorney General has opined that "the question of whether a particular enactment constitutes a zoning ordinance is often a matter of degree."[17]

A

¶ 35. To identify a zoning ordinance, we begin by considering characteristics that are traditionally present in a zoning ordinance.

■■■

¶ 36. First, zoning ordinances typically divide a geographic area into multiple zones or districts. " 'Zoning ordinances comprehensively assign compatible land uses to zoning districts throughout the community.' . . . The municipality is generally divided into different districts, such as residential, commercial, and industrial."[18] Because zoning ordinances typically carve a geographic area into multiple districts, they often con-

or an expression of some other phase of the police power usually must be determined by the nature and purpose of the ordinance, its relation to the general plan of zoning in the city, its provisions and the terms used.").

[17] 76 Op. Att'y Gen. 60, 68 (1987).

[18] *Town of Rhine v. Bizzell,* 2008 WI 76, ¶ 17, 311 Wis. 2d 1, 751 N.W.2d 780 (citing Daniel R. Mandelker, *Land Use Law* § 1.04 (5th ed. 2003)). *See also Town of Clearfield v. Cushman,* 150 Wis. 2d 10, 19, 440 N.W.2d 777 (1989) (quoting 8 McQuillin, *Municipal Corporations* § 25.01 (3d ed. 1983)) (" 'Zoning is governmental regulation of the uses of land and buildings according to districts or zones.' "); *Heitman v. City of Mauston Common Council,* 226 Wis. 2d 542, 550, 595 N.W.2d 450 (Wis. App. 1999) ("Zoning has been described as the division of a given jurisdiction's land into districts or 'zones' and the establishment of regulations within those zones to control both the use to which property may be placed and the construction of structures.").

sist of both the text of the ordinance and a map showing the districts.[19]

¶ 37. The statute governing zoning, however, provides that a municipality "*may* divide [the community] into districts . . . and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures, or land."[20]

¶ 38. Second, within the established districts or zones, certain uses are typically allowed as of right and certain uses are prohibited by virtue of not being included in the list of permissive uses for a district. "In general, zoning ordinances provide landowners with permitted uses, which allow a landowner to use his or her land, in said manner, as of right."[21]

---

Wisconsin Stat. § 62.23(7)(b) uses permissive language, stating that a local government *may* divide the jurisdiction into districts. Because we conclude that the Ordinance is not a zoning ordinance, we need not address the legality of an entire jurisdiction being zoned for a single-purpose use. The plaintiffs rely on a dissenting opinion from *Town of Hobart v. Collier,* 3 Wis. 2d 182, 87 N.W.2d 868 (1958), for the assertion that an entire town may be a single zoning district. The dissent in *Hobart* wrote, "We do not construe the majority opinion as holding that a zoning . . . ordinance which zones an entire town or municipality in a single residence use district is *per se* unconstitutional and void." 3 Wis. 2d at 191 (Currie, J., dissenting).

[19] *See* Lynn Markham & Rebecca Roberts, *Zoning Board Handbook for Wisconsin Zoning Boards of Adjustment & Appeals* 6 (2d ed. 2006) ("A zoning ordinance consists of two legally adopted elements: the zoning map and the text of the zoning ordinance.").

[20] Wis. Stat. § 62.23(7)(b) (emphasis added).

[21] *Bizzell,* 311 Wis. 2d 1, ¶ 19 (citing Daniel R. Mandelker, *Land Use Law* § 6.39 (5th ed. 2003)). *See also* 3 Ziegler, *supra* note 6, § 61:9 ("Most zoning ordinances set forth, either as part

¶ 39.  Third, and closely related, zoning ordinances are traditionally aimed at directly controlling *where* a use takes place, as opposed to *how* it takes place. A distinction between a zoning ordinance and other regulations is whether the ordinance is addressed to location or activity.[22] As one treatise explains, a licensing ordinance that "is intended to regulate a particular occupation, rather than the general uses of land" is generally not considered a zoning ordinance.[23]

of the text or, more frequently, in a schedule incorporated therein by reference, the uses permitted as of right in each district, those permitted as accessory to the listed permitted uses, and those permitted under the heading of 'special exceptions.' ").

As the above quote suggests, some zoning ordinances include "special exceptions," also known as "conditional uses," which are allowed in a zone only with the approval of local authorities. The existence of conditional uses does not change the fact that most zoning ordinances allow some uses as of right and prohibit some uses in all circumstances.

[22] For examples of the difficulty of applying the "where" and "how" dichotomy to regulations of trailer camps, *see David A. Ulrich, Inc. v. Town of Saukville,* 7 Wis. 2d 173, 178, 96 N.W.2d 612 (1959) (zoning provisions governed *where* a trailer camp could be maintained but a town may regulate "*how* a trailer camp is to be maintained" without invoking its zoning authority); *Edelbeck v. Town of Theresa,* 57 Wis. 2d 172, 178, 203 N.W.2d 694 (1973) (ordinance requiring, among other things, submission of plans and specifications for the physical siting of a trailer park was a zoning ordinance); *Town of Clearfield v. Cushman,* 150 Wis. 2d 10, 20, 440 N.W.2d 777 (1989) (ordinance that focused on the "how" of living in a trailer—e.g., connecting to sanitary sewer and water systems and requiring minimum size and compliance with a uniform building code—was not a zoning ordinance).

[23] *See* 8 McQuillin, *supra* note 3, § 25.14.

¶ 40. Fourth, zoning ordinances traditionally classify uses in general terms and attempt to comprehensively address all possible uses in the geographic area. A treatise concludes that "zoning regulations . . . must be expressive of a comprehensive plan . . . to control and direct the use and development of property in a municipality, or a large part thereof, by dividing it into districts according to the present and potential use of the property."[24] As the Wisconsin Attorney General opined, "the more comprehensive the ordinance, the more likely it will be characterized by a court as a zoning ordinance."[25]

¶ 41. Fifth, traditionally, though not always, zoning ordinances make a fixed, forward-looking determination about what uses will be permitted, as opposed to case-by-case, ad hoc determinations of what individual landowners will be allowed to do.[26] It has become increasingly common for zoning ordinances to allow for uses that are conditionally permitted, which gives local

[24] *See* 1 E.C. Yokley, *Zoning Law and Practice* § 2–3 (4th ed. 1978) (2000 revision by Douglas Scott MacGregor).

[25] 76 Op. Att'y Gen. 60, 68 (1987).

[26] *See* 1 Ziegler, *supra* note 6, § 1:5 ("The term 'Euclidean' zoning describes the early zoning concept of separating incompatible land uses through the establishment of fixed legislative rules that would be largely self-administering. . . . Euclidean zoning envisioned a land use system where discretionary review of individual proposed uses would be the 'exception' rather than the rule and zoning restrictions would be uniform for each class or kind of building in each district.").

"Euclidean zoning" refers to classic conceptions of zoning. The phrase comes from *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926).

officials the power to make decisions on an individual, ad hoc basis.[27] Today, most zoning ordinances contain a combination of permitted uses and conditionally permitted uses.[28]

¶ 42. Sixth, traditional zoning ordinances allow certain landowners whose land use was legal prior to the adoption of the zoning ordinance to maintain their land use despite its failure to conform to the zoning ordinance. This practice is motivated by constitutional considerations.[29]

¶ 43. This list is not exhaustive. Many jurisdictions, including Wisconsin, have certainly recognized the possibility that an ordinance need not fit the traditional mold perfectly in order to constitute zoning.[30] Nonetheless, the list attempts to catalogue those characteristics that are at the heart of traditional zoning ordinances.

---

[27] *See* 1 Ziegler, *supra* note 6, § 1:14.

[28] *See* 3 Ziegler, *supra* note 6, § 61:9 ("Most zoning ordinances set forth, either as part of the text or, more frequently, in a schedule incorporated therein by reference, the uses permitted as of right in each district, those permitted as accessory to the listed permitted uses, and those permitted under the heading 'special exceptions.' ").

[29] *See County of Columbia v. Bylewski*, 94 Wis. 2d 153, 169–70 & n.9, 288 N.W.2d 129 (1980) (describing the protection granted to preexisting, "non-conforming" uses); 4 Ziegler, *supra* note 6, § 72:2 (describing the "doctrine of vested nonconforming uses").

[30] *See, e.g., Heitman*, 226 Wis. 2d at 553 (holding that a proposed initiative that would forbid a treatment facility for sexually violent persons from being located anywhere within a city was an invalid initiative because such regulation could only occur via zoning).

¶ 44.   The "purposes" of zoning can be articulated in many ways, with varying levels of generality.

¶ 45.   On the broad, unspecific end of the spectrum, one treatise asserts that the purpose of zoning is "to promote the welfare of the community as a whole."[31] Another treatise states that "[t]he ultimate and general purposes of zoning are those traditionally associated with the police power."[32] Needless to say, defining the purpose of zoning this broadly does nothing to help us distinguish a zoning ordinance from a non-zoning police power ordinance. Relying on such broad formulations of the purpose of zoning would lead us to label far too many ordinances as zoning ordinances.

¶ 46.   Perhaps a less broad purpose of zoning is " 'to regulate the growth and development of the city in an orderly manner.' "[33] The proper purpose of zoning has also been described as " 'conserving the value of property and encouraging the most appropriate use of the land.' "[34] These statements too are broad and could apply to a far-reaching range of planning and regulation undertaken by local governments.

¶ 47.   A number of sources, including some of the same treatises, provide more specific statements of the purpose of zoning. For example, "[i]ts ultimate purpose is to confine certain classes of buildings and uses to

---

[31] *See* 1 Yokley, *supra* note 24, § 2–2.

[32] *See* 8 McQuillin, *supra* note 3, § 25.19.

[33] *See* 1 Ziegler, *supra* note 6, § 1:3 (quoting *Naylor v. Salt Lake City Corp.,* 410 P.2d 764, 765 (Utah 1966)).

[34] *State ex rel. Saveland Park Holding Corp. v. Wieland,* 269 Wis. 262, 269, 69 N.W.2d 217 (1955) (quoting *Gabrielson v. Glen Ridge,* 176 A.2d 676, 679 (N.J. 1935)).

certain localities;"[35] "the purposes of zoning usually are to restrict certain classes of buildings or uses to particular localities,"[36] or "[z]oning ordinances comprehensively assign compatible land uses to ... districts throughout the community."[37]

¶ 48.  The League of Wisconsin Municipalities asserts in its nonparty brief that "[t]he separation of incompatible land uses is the central purpose of zoning."[38] The League argues that this predominant purpose provides a genuine and effective basis for distinguishing the exercise of zoning power from the exercise of non-zoning power. Separating incompatible land uses has been emphasized as a central purpose of zoning since zoning was first recognized as constitutional by the United States Supreme Court.[39]

¶ 49.  Zoning is a flexible tool utilized in many different ways by local governments across the nation. The central characteristics of traditional zoning ordinances and the various statements of the purposes of

[35] *See* 1 Yokley, *supra* note 24, § 2–2.

[36] *See* 8 McQuillin, *supra* note 3, § 25.19.

[37] *Bizzell,* 311 Wis. 2d 1, ¶ 17 (quoting Daniel R. Mandelker, *Land Use Law* § 1.04 (5th ed. 2003)).

[38] As support for its preferred formulation, the League cites *State v. Huntington,* 143 A.2d 444, 446 (Conn. 1958); *Ragucci v. Metro Dev. Comm'n of Marion County,* 702 N.E.2d 677, 679 (Ind. 1998); and *In re Sardi,* 751 A.2d 772, 774 (Vt. 2000).

In *Town of Rhine v. Bizzell,* 2008 WI 76, ¶ 17, 311 Wis. 2d 1, 751 N.W.2d 780, the court, quoting Daniel R. Mandelker, Land Use Law § 1.04 at 1–4 (5th ed. 2003), wrote: "[z]oning ordinances comprehensively assign compatible land uses to zoning districts throughout the community."

[39] *See Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 394 (1926). *See* 1 Ziegler, *supra* note 6, § 1:5 (describing classic concepts of Euclidean zoning).

zoning provide an analytically helpful framework for determining whether a challenged ordinance is a zoning ordinance.

## C

¶ 50. We now turn to the Ordinance itself, first comparing and contrasting its characteristics to the traditional characteristics of zoning ordinances and then comparing its purposes to the purposes of zoning ordinances.

¶ 51. First, unlike traditional zoning ordinances that create districts, the Ordinance does not create districts or zones in the Town. Rather, it applies universally to all land in the Town.

¶ 52. Second, unlike traditional zoning ordinances that list uses permitted as of right in each district and prohibit those not listed, the Ordinance permits nothing as of right, nor does it automatically prohibit anything. Rather, nonmetallic mining has the potential to be permitted or conditionally permitted in all parts of the Town.

¶ 53. Third, unlike traditional zoning ordinances that directly control the location of activities, the Ordinance licenses nonmetallic mining on the basis of the nature of the activity. "While zoning regulates use based on location, licensing regulates the type of activity conducted wherever it might be located."[40] The Ordinance does not directly create areas where nonmetallic mining is allowed and others where it is not allowed. It regulates nonmetallic mining wherever it might be located.

---

[40] *See* 1 Yokley, *supra* note 24, § 2–1.

¶ 54. The plaintiffs contend that the Ordinance does not simply tell the applicant the manner in which a mining operation is to be carried out. Rather, they assert that the Ordinance is intrinsically and inseparably connected with where a mine will be operated. The nonparty brief of Aggregate Producers of Wisconsin, Inc., and Wisconsin Transportation Builders Association, Inc., asserts that the Ordinance's stated intent is to "regulate the location" of nonmetallic mines. The nonparty brief also notes that "construction," "installation," "alteration," and "design" are all intrinsically linked to and dependent on the location of the mine.[41]

¶ 55. The Ordinance does affect the location where mines may operate. It may be that there are certain locations in the Town where a nonmetallic mine would not be allowed, even with conditions attached, but the Ordinance's impact on the location of nonmetallic mines is an incidental consequence of the Ordinance's general goal of ensuring that nonmetallic mines are "in the best interests of the citizens of the Town, and will be consistent with the protection of public health, safety and the general welfare," no matter where they are located.[42]

¶ 56. Fourth, unlike traditional zoning ordinances that endeavor to address and organize comprehensively all potential land uses in the geographic area

---

[41] For the Ordinance's statement of intent, see ¶ 14, *supra.*

[42] General police power ordinances with similar potential to incidentally affect the location where a land use may occur have been upheld by this court in the past. For example, in *Halverson,* 38 Wis. 2d at 9, the court held that a building code including setback requirements was validly enacted under the general police power. A setback requirement could render it impossible for a landowner to use his or her land for a desired use.

514

in order to separate incompatible land uses, the Ordinance applies only to one particular activity—nonmetallic mining.

¶ 57. The plaintiffs urge that the Ordinance comprehensively regulates nonmetallic mining and thus resembles a zoning ordinance. This argument misunderstands the meaning of the word "comprehensive" as it is typically used in the context of zoning.[43] The word "comprehensive" as used in the zoning statute and the literature does not ordinarily refer to an ordinance that thoroughly, that is, comprehensively, regulates a single activity. The phrase ordinarily refers to an ordinance that addresses what classes of activities might be pursued in geographic areas.

¶ 58. In a similar vein, the plaintiffs and some amici curiae urge that an ordinance is a zoning ordinance when it "pervasively" regulates the use of land.

¶ 59. The plaintiffs urge us to hold that an ordinance that "constitutes a pervasive regulation of the use of land" must be classified as a zoning ordinance. They argue the Ordinance is a pervasive regulation because it significantly regulates all aspects of nonmetallic mining and is permeated with site-specific references and regulations. The plaintiffs assert that the Town may condition the nonmetallic mining permit, for example, by

---

[43] *See, e.g.,* Wis. Stat. § 62.23(7)(c) ("Such regulations shall be made in accordance with a comprehensive plan . . . ."); Patricia E. Salkin, *American Law of Zoning,* § 5.3 (5th ed. 2011) (discussing various definitions of "comprehensive plan" and endorsing a definition that includes the following: "a plan of the division of the land between public and private uses, specifying the general location and extent of new public improvements . . . and, in the case of private developments, the general distribution among various classes of uses, such as residential business and industrial uses").

limiting the size and location of the active mining area in relationship to the boundaries and highways, by limiting the location, size and height of structures, and by imposing setbacks. According to the plaintiffs, these elements control the use of the land, and the Ordinance fits the purpose of zoning ordinances set forth in *State ex rel. Schleck v. Zoning Board of Appeals,* 254 Wis. 42, 51, 35 N.W.2d 312 (1948), which states as follows: "The very purpose of a zoning law is to establish limitations upon the use of private property and prescribe how it may be used. A zoning law necessarily, at least in many cases, limits the use which might otherwise be made of the property."

¶ 60.   The nonparty briefs of Preferred Sands of Minnesota, LLC, and Wisconsin Realtors Association and Wisconsin Builders Association also argue that the distinction between a zoning ordinance and a non-zoning police power ordinance rests on how pervasive or substantial the regulation is.[44] Preferred Sands urges the following test:   "[A]n ordinance is a zoning

---

[44] The nonparty brief of the Wisconsin Realtors Association and Wisconsin Builders Association cites the following cases for this proposition: *Heitman,* 226 Wis. 2d at 552–53; *State ex rel. Saveland Park Holding Corp. v. Wieland,* 269 Wis. 262, 69 N.W.2d 217 (1955); *Halverson,* 38 Wis. 2d at 9; and *Cushman,* 150 Wis. 2d 10.

This nonparty brief also takes the position that even if the local ordinance regulates land use in a pervasive manner, Wisconsin courts will uphold the regulation as a non-zoning regulation only if independent statutory authority exists for such regulation. We reject the contention that any ordinance that could be construed as pervasively affecting the use of land must be supported by independent statutory authority beyond the police power or zoning authority to avoid being classified as a zoning ordinance.

ordinance if it constitutes, or would constitute, a substantial interference with land use."[45]

¶ 61. In relying on the concepts of "pervasive regulation of land use" and "substantial interference with land use"[46] (concepts which seem to be used interchangeably in case law and in the literature) to identify a zoning ordinance, the plaintiffs and the amici curiae draw upon a feature that our case law and some authorities consider relevant.

¶ 62. The court has stated that when a "proposed initiative constitutes a pervasive prohibition on the use of land within a jurisdiction, it is either a zoning ordinance or an amendment to a zoning ordinance."[47]

¶ 63. The Attorney General has declared that when "an ordinance constitutes a pervasive regulation of, and in many instances a prohibition on the use of, land, I . . . conclude that such an ordinance is a zoning ordinance which requires county board approval."[48]

---

[45] Preferred Sands draws on 1 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning,* § 1:10 (2011), for this formulation.

[46] *See* 1 Ziegler, *supra* note 6, § 1:10 ("Where the particular restriction constitutes, or would constitute, a substantial interference with land use, the municipality ordinarily must treat it as a zoning regulation . . . .").

[47] *Heitman,* 226 Wis. 2d at 553.

[48] 76 Op. Att'y Gen. 60, 68 (1987).

In *Gordie Boucher,* 178 Wis. 2d at 94 (overruled by *Wood,* 260 Wis. 2d 71), the court of appeals adopted the Attorney General's view:

We believe that the attorney general has stated the proper test to determine when a local regulation may be imposed under the locality's general police power . . . and when the regulation is zoning . . . .

¶ 64.   Unfortunately, the phrases "pervasive regulation" of the use of land or "substantial interference" with the use of land are not effective bright-line rules to guide local governments or courts. These phrases turn out to be woefully dim when applied to varying facts and may be over-inclusive in application.

¶ 65.   As pointed out by the dissent in *Heitman v. City of Mauston Common Council,* 226 Wis. 2d 542, 556–59, 595 N.W.2d 450 (Ct. App. 1999), the words "pervasive regulation of land use" are overly broad and bring within the classification of zoning many ordinances that have been considered non-zoning exercises of the police power.

¶ 66.   Fifth, unlike traditional zoning ordinances that feature fixed, self-administering rules and do not allow for case-by-case, ad hoc assessments of individual uses in particular locations, the Ordinance features no permitted uses. The Ordinance operates exclusively on a case-by-case basis, where each would-be land user must apply for a permit to engage in nonmetallic mining. Although there has been an increase in "conditional uses" in zoning ordinances, zoning ordinances still generally include certain categories of uses that are permitted as of right and do not require case-by-case assessment.[49]

The essence of the attorney general's opinion is that some land use controls are so pervasive that their imposition must be surrounded with the substantive and procedural safeguards which zoning requires.

[49] *See* Markham & Roberts, *supra* note 19, at 7 ("Generally, two categories of allowable uses are listed for each zoning district: permitted uses and conditional uses.").

¶ 67. The plaintiffs urge that the Ordinance must be a zoning ordinance because mines are granted "conditional use permits," a phrase commonly associated with conditionally allowed uses in the zoning context.

¶ 68. This argument makes too much of the Ordinance's terminology. Regulations and licensing regimes adopted under the police power commonly require permits or licenses. Wisconsin Stat. § 61.34(1) allows localities great flexibility in their use of the police power. Towns may utilize "license, regulation, suppression, borrowing, taxation, special assessment, appropriation, fine, imprisonment, and other necessary or convenient means" in order to implement ordinances. If one is not persuaded that granting conditional permits is allowed as a method of "license" or "regulation," it is comfortably a "necessary or convenient means" to implement an ordinance.

¶ 69. Just as the Ordinance's use of the phrase "conditional use permit" does not render it a zoning ordinance, the Town's statement that the Ordinance was adopted pursuant to its general police powers is not determinative of the classification of the ordinance. "[A] municipality cannot evade the . . . legislative limitations imposed on the zoning power . . . by labeling what is actually a zoning ordinance a 'police power' ordinance."[50]

¶ 70. Sixth, like traditional zoning ordinances that allow certain preexisting uses to remain although they do not conform to the ordinance, the Ordinance "grandfathers" existing nonmetallic mines. However, no

---

[50] *See* 1 Ziegler, *supra* note 6, § 1:10.

rule exists that a non-zoning police power ordinance cannot exempt preexisting uses.

¶ 71. In this instance, the Town apparently determined that preexisting mines had proven themselves to be harmless enough that the owners would not be required to undergo the application process and obtain permits unless the activities were expanded. That the Town chose to make the Ordinance less far-reaching than it might have does not transform it into a zoning ordinance.

¶ 72. In sum, many traditional characteristics of zoning ordinances are absent from the Ordinance. The Ordinance does not create multiple districts; it applies with equal force to any location in the Town. The Ordinance does not confine nonmetallic mining to any particular area in the Town; no parts of the Town are foreclosed to nonmetallic mining. The Ordinance does not directly affect where an activity may take place; it governs how an activity must be conducted and incidentally limits where it may be conducted. The Ordinance does not automatically permit or prohibit any land use; it operates entirely on a case-by-case basis. The Ordinance does not comprehensively address a wide range of potential classes of land use; it speaks only to a single, specific land use.

¶ 73. Nevertheless, the Ordinance has similarities to a zoning ordinance. Conditional allowance of a land use and exemption of preexisting land uses are features associated with zoning ordinances. The Ordinance clearly regulates the use of land in a potentially dramatic way. It regulates nonmetallic mining in many respects and in great detail. A landowner might be barred from engaging in nonmetallic mining in a certain location or in the entire Town because of the terms

520

of the Ordinance. The extent to which an ordinance affects the use of land is a relevant consideration in determining whether the regulation is a zoning ordinance, but this consideration is not dispositive. Many non-zoning ordinances affect the use of land.[51]

¶ 74. An examination of the similarities and differences points to the conclusion that this Ordinance is not a zoning ordinance.

¶ 75. Finally, we compare the purposes of the Ordinance with the purposes of zoning.

¶ 76. As is the case with the Ordinance's characteristics, the Ordinance's purpose overlaps with the purposes of zoning to some extent. Recall that the "purpose" of zoning could be stated as broadly as "[t]o promote the welfare of the community as a whole." In that sense, the Ordinance and zoning have identical purposes. The Ordinance's self-proclaimed "purpose" is "to promote the health, safety, prosperity, aesthetics and general welfare of the people and communities within the Town . . . ." As one of the nonparty briefs points out, the Ordinance is consistent with a broad statement of

[51] In its nonparty brief, Preferred Sands of Minnesota, LLC, argues that a reference to "mining" in the zoning statute, Wis. Stat. § 62.23(7), and references to "zoning" in the nonmetallic mining reclamation statute, Wis. Stat. § 295.20, "reveal the Wisconsin Legislature's intent and expectation that nonmetallic mining will be addressed through zoning."

As we have stated, zoning is a subset of the police power and simply because a regulation could be achieved through zoning does not necessarily mean that zoning is the only permissible way to achieve the regulation. The brief's argument regarding the references to zoning in Wis. Stat. § 295.20 does not persuade us that regulation of nonmetallic mines may be achieved only through a zoning ordinance.

the general purposes of zoning law in that it establishes limitations on the use of private property.

¶ 77. Such broad statements of the purposes of zoning and the purposes of the Ordinance are not helpful in distinguishing a zoning ordinance from an ordinance enacted pursuant to non-zoning police power. The statutorily enumerated purposes of zoning are not the exclusive domain of zoning regulation.[52]

¶ 78. A more specific and analytically helpful formulation of the "purpose" of zoning, at least in the present case, is "to separate incompatible land uses." In this sense, the Ordinance does not seem even loosely similar to zoning. The Ordinance does not explicitly separate different land uses, nor does it explicitly declare any land uses incompatible with any others. The Town's "intent" appears to be to regulate in detail nonmetallic mines.

¶ 79. The present case is not a case in which the Town is evading the procedural requirements of zoning by adopting a plethora of ordinances that, taken together, achieve results so similar to a traditional zoning ordinance that they must be treated as such.

\* \* \* \*

¶ 80. A comparison of the traditional characteristics of zoning ordinances to the characteristics and purposes of the Ordinance at issue reveals that the fundamental differences between the Ordinance and the traditional characteristics and purposes of zoning

---

[52] *Wood,* 260 Wis. 2d 71 (rejecting the argument that only zoning regulations may consider use of land and holding that zoning and platting are not mutually exclusive).

ordinances overwhelm the similarities. The Town's Ordinance lacks many of the fundamental, traditional indicia of a zoning ordinance. Its purpose is the same as that of a traditional zoning ordinance only if we define the purpose with a sweeping level of generality. Thus, we hold that the Ordinance is a valid exercise of the Town's non-zoning police power; no county board approval was required.

¶ 81.   Accordingly, we reverse the judgment of the circuit court.

*By the Court.*—The judgment of the circuit court is reversed.

¶ 82.   Justice DAVID T. PROSSER did not participate.