COURT OF APPEALS
DECISION
DATED AND FILED

April 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1091**

STATE OF WISCONSIN

Cir. Ct. No. **2020CV36**

IN COURT OF APPEALS
DISTRICT IV

---

DYERSVILLE READY MIX INC. D/B/A BARD MATERIALS,

PLAINTIFF-APPELLANT,

V.

IOWA COUNTY BOARD OF SUPERVISORS,
IOWA COUNTY PLANNING AND ZONING COMMITTEE,
AND TOWN OF BRIGHAM,

DEFENDANTS-RESPONDENTS.

---

APPEAL from an order of the circuit court for Iowa County: MATTHEW C. ALLEN, Judge. *Affirmed*.

Before Kloppenburg, P.J., Blanchard, and Nashold, JJ.

¶1 BLANCHARD, J. A landowner in Iowa County wants to operate a quarry on a parcel of land that is in a county zoning district where quarrying is prohibited. Accordingly, the landowner petitioned the Iowa County Board of

Supervisors (the County Board) to reclassify the parcel from its current zoning district to one that allows quarrying as one potential conditional use. The County Board denied the rezone petition. On certiorari review, the circuit court affirmed the County Board, and the landowner appeals.

¶2 The landowner argues that the County Board incorrectly based its decision on the zoning standards for obtaining a conditional use permit (CUP), instead relying on the separate zoning standards for obtaining a rezone. The landowner fails to persuade us that the County Board proceeded on an incorrect legal theory.

¶3 In a closely related argument, the landowner contends that the county zoning ordinance "mandates" that the County Board grant the rezone petition because the permitted uses in both the existing and the petitioned-for zoning districts are limited to direct agricultural activities, and therefore there could be no justification for denying the rezone petition. We conclude that the County Board could lawfully deny the rezone petition based on the significant differences in conditional uses that may be allowed in the two zoning districts.

¶4 In another closely related argument, the landowner asserts a constitutional claim, which is that the County Board denied it the right to substantive due process. Specifically, the landowner contends that, because the permitted uses in both zoning districts are limited to direct agricultural activities, it was clearly arbitrary and unreasonable for the County Board to deny the rezone petition based on differences in conditional uses. We conclude that the landowner fails to support a constitutional claim.

¶5 Accordingly, we affirm the circuit court decision upholding the County Board's denial of the landowner's rezone petition.

2

**BACKGROUND**

¶6    Central to the parties' arguments is the distinction that is often drawn in local zoning ordinances between permitted uses and conditional uses, which is a distinction contained in the Iowa County ordinances at issue. When a zoning ordinance identifies a permitted use, that use is allowed as of right in the zoning district. *Town of Rhine v. Bizzell*, 2008 WI 76, ¶19, 311 Wis. 2d 1, 751 N.W.2d 780. In contrast, when a conditional use is identified in a zoning ordinance, the use is one "that a community recognizes as desirable or necessary" in the zoning district, but it is one that "the community will sanction only in a controlled manner." *See id.*, ¶20. This is accomplished by mandating an additional level of decision-making about whether to grant or deny a CUP, and then deciding, in those cases in which a CUP might be granted, whether to include specific conditions. *See id.*, ¶¶21-24; *Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, ¶41, 338 Wis. 2d 488, 809 N.W.2d 362 ("It has become increasingly common for zoning ordinances to allow for uses that are conditionally permitted, which gives local officials the power to make decisions on an individual, ad hoc basis."). Thus, like many jurisdictions, Iowa County guarantees landowners the right to conduct permitted uses on their lands, but requires them to seek and justify a CUP to allow a conditional use.

¶7    With that distinction in mind, we turn to the background facts. The landowner's parcel is approximately 100 contiguous acres, located in the Town of Brigham, in eastern Iowa County, southwest of Bluemound State Park and east of the Village of Barneveld. The landowner simultaneously filed with the Iowa County Office of Planning and Development two petitions, one requesting that the

county rezone the entire parcel (but no land outside the parcel) and the other requesting that the county also grant a CUP to allow quarrying within the parcel.[1] More specifically, the petitions called for the County Board to rezone the parcel and, after that, for the Iowa County Planning and Zoning Committee (the P & Z Committee) to issue a CUP to allow "nonmetallic mining," or quarrying, of limestone and dolomite within the parcel.

¶8      For the following reasons, the landowner needs both the rezone (which takes the form of an amendment to the zoning map), as well as the CUP, before it may operate a quarry on the parcel. The county's zoning map places the parcel in the A-1 zoning district, which is designated for Exclusive Agricultural uses. *See* IOWA COUNTY, WIS., ZONING ORDINANCE § 3.2.[2]      Exclusive Agricultural is one of the county's two agricultural districts (the other being AC-1, Exclusive Agricultural Conservancy Overlay District). ZONING ORD. § 3.1.

¶9      The rezone that the landowner seeks would shift the parcel from the Exclusive Agricultural district to the AB-1 district, which is designated for

---

[1] More precisely, the applications were joint filings by the then-current landowner of the parcel and the now-current landowner. But there is no dispute that, since the filing of the applications, the current landowner has acquired the parcel. The current landowner, Dyersville Ready-Mix, Inc, d/b/a/ BARD Materials, is the plaintiff-appellant. The prior owner is not a party in this appeal.

[2] We rely on the version of the Iowa County Zoning Ordinance contained in the certiorari record. Following the parties, we assume that there has been no change to that ordinance that could matter to our discussion since the events described in this opinion. We use "ZONING ORD." in all additional citations to this Zoning Ordinance.

4

Agricultural Business uses. ZONING ORD. § 3.5. Agricultural Business is one of the county's seven business districts.[3] ZONING ORD. § 3.5.

¶10    Nonmetallic mining is neither a permitted use nor a potential conditional use in Exclusive Agricultural. The permitted uses in Exclusive Agricultural are: "[f]arms" and related structures; "agricultural uses" as defined in WIS. STAT. § 91.01(2); rental of farm residences no longer used as farm dwellings; "[h]ousehold occupations" consistent with § 91.01(1); certain roadside stands; and residential kennels if on a parcel larger than 40 acres.[4] ZONING ORD. § 3.2.

¶11    Nonmetallic mining is also not a permitted use in Agricultural Business. The only permitted use in Agricultural Business is "agricultural cropping."[5] ZONING ORD. § 3.5. But nonmetallic mining is one potential conditional use in Agricultural Business—along with 12 other conditional uses that include establishing and operating a cheese factory, a public airport or airstrip, or an ethanol or bio-fuel plant. ZONING ORD. § 3.5. In contrast, the conditional uses allowed in the current district, Exclusive Agricultural, are less intensive,

---

[3] For context, we note that the county's other business zoning districts, in addition to agricultural business are: RB-1, Recreational Business; B-1, Local Business; B-2, Highway Business; B-3, Heavy Business; B-4, Industrial Business; and B-5, Adult Entertainment Business.

[4] As context for these zoning ordinance references to provisions in WIS. STAT. ch. 91 of the state statutes, ch. 91 addresses farmland preservation; it is among the state statutes that "encourage local governments to plan for the preservation of farmland as part of their comprehensive plans." *Defend Town Plans, U.A. v. Jefferson Cnty. Bd. of Supervisors*, 2024 WI App 67, ¶5, 414 Wis. 2d 271, 14 N.W.3d 665. Chapter 91 defines "agricultural use" at WIS. STAT. § 91.01(2) and "accessory use" at § 91.01(1).

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[5] It is not disputed that the permitted uses in Exclusive Agriculture, summarized in the text above, include "agricultural cropping," which is the sole permitted use in Agricultural Business.

including: a single-family residence that is "outside the cluster of usual farm buildings"; certain roadside stands; a private airstrip associated with farming that is not "incompatible with surrounding land uses"; a cemetery, under specified circumstances; a professional home office; and a commercial kennel. ZONING ORD. § 3.2.

¶12 The landowner's petition to rezone the parcel initiated a process that is governed statewide by WIS. STAT. § 59.69(5), which addresses county zoning procedures. In Iowa County, these statutory procedures are supplemented by ZONING ORD. § 11.0, which addresses changes and amendments to the county zoning ordinance. Under these state and county standards, the P & Z Committee was to make a recommendation to the County Board regarding the rezone petition, and the County Board would then vote to: grant the rezone petition, deny it, or refer it back to the P & Z Committee for further review. *See* WIS. STAT. §§ 59.001(1), 59.69(5)(e)4., 5. (providing in part that the only body with authority to amend a county's zoning ordinance is the county board); ZONING ORD. § 11.0.

¶13 In addition, statewide county zoning standards afforded certain rights to the Brigham Town Board. Specifically, as the body representing "a town affected by the proposed amendment" to the zoning ordinance, the Town Board would have the option of filing a resolution recommending denial. *See* WIS. STAT. § 59.69(5)(e)3. And, if the County Board voted to adopt the proposed ordinance amendment, the Town Board would have up to 40 days to veto the County Board decision. *See* § 59.69(5)(e)3., 3m., 6.

¶14 As for the CUP that the landowner seeks—in the event that the County Board rezones the parcel and the Town Board does not veto that decision—this would involve a process that is governed statewide by WIS. STAT.

6

§ 59.59(5e), which addresses the procedures for county conditional use permitting. In Iowa County, these CUP procedures are supplemented by ZONING ORD. § 4. The CUP petition to allow nonmetallic mining would be decided by a vote of the P & Z Committee. *See* § 59.69(5e); ZONING ORD. §§ 4.1, 4.4.[6]

¶15 Returning to the chronology here, the Brigham Town Board recommended against granting what it referred to as the landowner's "quarry application." The Town Board took the position that "the application" is inconsistent with the Town's comprehensive plan in five ways.[7] The Town Board supported those positions with citations to corresponding sections of its comprehensive plan.

¶16 The matter moved from the Town level to the county level when the P & Z Committee held a public meeting. After taking public comment, the P & Z Committee recommended denial of the rezone petition based on what it deemed "inconsistencies with the Town of Brigham Comprehensive Plan." The P & Z Committee took no action on the CUP petition; this was obviated by its recommendation that the County Board deny the rezone petition.

¶17 After the P & Z Committee recommended denial, the County Board addressed the rezone petition at a public hearing. Speakers included supporters of

---

[6] Although the landowner's quarry plans did not reach this stage, for context we note that P & Z Committee decisions denying or granting CUP petitions may be appealed to the Iowa County Board of Adjustment, a different body from the County Board. ZONING ORD. §§ 4.4, 10. The avenue for a potential appeal from a Board of Adjustment determination would then be to the circuit court on statutory certiorari review. WIS. STAT. § 59.694(10).

[7] The record contains the March 2019 version of the 89-page Comprehensive Plan for the Town of Brigham. One section of the comprehensive plan analyzes "existing agricultural, natural, and cultural resources in and around the Town of Brigham" and "existing conditions, goals, objectives, and recommendations for the effective management of resources in the town."

the rezone petition and others who expressed concerns about what they characterized as the potential for aesthetic and environmental degradation, decreased property values in the area, and alleged inconsistency with the Town's comprehensive plan. Objections to the proposed rezone were primarily expressed as concerns about the landowner's announced intention to create and operate a quarry on the parcel. Similarly, supporters of the rezone also consistently framed their position as a specific defense of the proposal to quarry on the parcel. But, as we discuss further below, speakers on both sides made clear that the issue before the County Board was the landowner's rezone petition, to be addressed under zoning standards, and not the CUP petition that would be addressed, if and when the matter reached that stage, under CUP standards.

¶18 The County Board took actions that caused the rezone petition to fail for lack of sufficient votes to grant it.[8] The landowner asked the County Board to reconsider. At a subsequent meeting, the County Board acknowledged the landowner's reconsideration request but took no action on it, implicitly rejecting it. The County Board did not memorialize its decision in writing, although the certiorari record includes a full transcript of the initial hearing and a partial transcript of the reconsideration hearing. Instead, the County Board implicitly allowed its actions and non-actions at the initial hearing and the reconsideration hearing to stand as a denial of the rezone petition, and no party now suggests otherwise.

---

[8] More precisely, the County Board voted down two motions: the first would have denied the rezone; the second would have referred the rezone petition back to the P & Z Committee, with the direction that the P & Z Committee draft an ordinance that would approve the rezone and then forward this ordinance to the County Board for an up-or-down vote.

8

¶19    The landowner commenced this action in the circuit court.[9]    The certiorari record was compiled, the parties briefed the issues, and the court affirmed the County Board's denial of the landowner's rezone petition in a written decision.    The court concluded that the County Board "did not act outside its jurisdiction, abuse its discretion, act arbitrarily, or commit an error of law in exercising its legislative zoning authority."    The landowner appeals.    We have two respondents' briefs on appeal:    one from the Town and another jointly submitted by the County Board and the P & Z Committee.    When referring to arguments in the joint respondents' brief, we describe these as arguments of the County.

## DISCUSSION

¶20    We benefit from the detailed, cogent decision of the circuit court. But in this appeal from a common law certiorari proceeding, we review the County Board's decision, not the circuit court's.    ***O'Connor v. Buffalo Cnty. Bd. of Adjustment***, 2014 WI App 60, ¶11, 354 Wis. 2d 231, 847 N.W.2d 881.    The form of court review here is common law certiorari because no statute provides for an alternative method of review.    *See* ***Ottman v. Town of Primrose***, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411.    Accordingly, we are limited to the

---

[9] The landowner initially sought declaratory relief in the form of a reversal of the County Board decision.  The circuit court granted the landowner's motion for summary judgment, ruling that the landowner is entitled to the proposed rezone.  The Town, the County Board, and the P & Z Committee appealed to this court.  *See* ***Dyersville Ready Mix Inc. v. Iowa Cnty. Bd. of Supervisors***, No. 2021AP1608, unpublished slip op. (WI App Oct. 20, 2022).  We agreed with one of their arguments, namely, that the landowner's claims fit exclusively within the scope of certiorari review and are not properly pursued in an action for declaratory judgment, and therefore the circuit court needed to conduct certiorari review based on the municipal record.  *See* *id.* (reversing order granting summary judgment to the landowner and remanding for certiorari review).

The Hon. Margaret Koehler made the decision to grant summary judgment.  The Hon. Matthew Allen made all other circuit court rulings referred to in this opinion.

consideration of four factors: (1) whether the County Board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that the County Board could reasonably reach the determination under review. *See id.* Courts base common law certiorari reviews exclusively on the record compiled by the municipality. *Id.*

¶21 While a decision of a county board to grant or deny a rezone petition may be reviewed by the courts, *see **Buhler v. Racine County**,* 33 Wis. 2d 137, 146, 146 N.W.2d 403 (1966), our review is deferential. This is based on two considerations, which we now summarize.

¶22 First, Wisconsin courts recognize that, compared with judges, local elected officials "are especially attuned to local concerns," and for this reason courts on certiorari review apply "a presumption of correctness and validity to a municipality's decision." ***Ottman***, 332 Wis. 2d 3, ¶¶48, 51. The petitioner seeking to challenge such a decision in court bears the burden of overcoming the presumption of correctness and validity. *Id.*, ¶51.

¶23 Second, specific to the zoning context, a local zoning decision is recognized to be "a legislative function." ***Buhler***, 33 Wis. 2d at 146. Accordingly, "judicial review is limited and judicial interference [is] restricted to cases of abuse of discretion, excess of power, or error of law." *Id.*; *see also **Heef Realty & Invs., LLP v. City of Cedarburg Bd. of Appeals***, 2015 WI App 23, ¶7, 361 Wis. 2d 185, 861 N.W.2d 797 ("The power to enact zoning ordinances is broadly construed in favor of the municipality."). Therefore, even if "a court may differ with the wisdom, or lack thereof, or the desirability of the zoning, the court, because of the fundamental nature of its power, cannot substitute its judgment for

that of the zoning authority in the absence of statutory authorization." *Buhler*, 33 Wis. 2d at 146-47. This form of deference to local zoning decisions is broadly applied. *Id.* at 147 (deference applies "not only to the necessity and extent of zoning but also to rezoning, classification, establishment of districts, boundaries, uses, and to the determination of whether or not there has been such a change of conditions as to warrant rezoning.").

¶24 On a related note, while the interpretation of a local ordinance ordinarily presents an issue of law that is subject to de novo review, on certiorari review we defer to the County Board's "interpretation of its own ordinance as long as it is reasonable." *O'Connor*, 354 Wis. 2d 231, ¶13. Such an interpretation "is unreasonable if it is contrary to law; if it is clearly contrary to the intent, history, or purpose of the ordinance; if it is without a rational basis; or if it directly contravenes the words of the ordinance." *Id.*

## I. Alleged Reliance on CUP Standards

¶25 The landowner argues that the County Board proceeded on the incorrect legal theory that the rezone petition was subject to the CUP standards in ZONING ORD. § 4.4 instead of the rezone standards in ZONING ORD. § 11.0. One way that the landowner frames this is to state that the County Board merely "accept[ed] the recommendation" of the P & Z Committee based on the reasoning of the P & Z Committee, which would have been legally incorrect because the only theory applied by the P & Z Committee was based on the CUP standards. We conclude that the landowner fails to support the argument that the County Board based its decision on the CUP standards or that the County Board

necessarily adopted the same reasoning as the P & Z Committee without exercising its own discretion.[10]

¶26     As a threshold matter on this issue, we question the premise that the certiorari record clearly establishes that the P & Z Committee rested its decision entirely on the CUP standards.  It is true that the transcript of the P & Z Committee hearing reflects a somewhat confusing presentation of the issues by county staff.  The transcript also reflects that the run of comments made at the hearing focused specifically on the potential effects of a quarry, as opposed to other conditional uses that may be permitted in Agricultural Business.  At the same time, however, the record also supports an interpretation that the P & Z Committee understood that the rezoning petition and the CUP petition presented separate issues and that the P & Z Committee resolved only the rezone issue.  For example, following the rezone vote, the P & Z Committee chair explained, "So we don't need to talk about conditional uses."  Further, some commenters at the meeting spoke generally to the nature of the parcel as being located in "a rural aesthetic of a gateway to the Town of Brigham, Barneveld, Iowa County[,] and the Town of Blue Mounds" and on that ground contended that the parcel is not suitable for rezoning.  In addition, as the circuit court noted in its decision, the

---

[10] In making this argument, the landowner sometimes asserts that the County Board "exceeded its jurisdiction" by "usurp[ing]" the CUP-petition-reviewing role of the P & Z Committee.  But the landowner does not offer a rationale to reverse the County Board based on this jurisdiction concept that does not depend entirely on a conclusion that the County Board applied the incorrect theories of law that we address in the text.  Therefore, we do not make any further separate references to the jurisdiction concept.

Separately, the landowner asserts in passing that the County Board "did not apply any legal standard," but the landowner fails to develop an argument to this effect.  We address the landowner's only developed argument on this issue, which is that the County Board applied the CUP standards instead of applying the rezone standards.

explicit basis of the P & Z Committee recommendation to the County Board was that a rezone would be "inconsistent with the goals and policies [of] the Town of Brigham Comprehensive Plan."

¶27     But we need not resolve the degree to which the P & Z Committee rested its decision on the CUP standards, wholly or in part.  This is because, as we discuss more fully below, the landowner fails to persuade us that the County Board necessarily adopted the same reasoning as the P & Z Committee, without exercising its own discretion.   This requires additional background regarding ZONING ORD. §§ 11.0 and 4.4.

¶28     ZONING ORD. § 11.0 specifies that the County Board "shall consider the stated purpose of the proposed zoning district," and it further directs that the County Board shall approve a request for rezoning only if the County Board can make eight findings.[11]   Most pertinent to the arguments of the parties is one

---

[11] Section 11.0 of the county zoning ordinance states the following in pertinent part:

> In acting upon a petition, the County shall consider the stated purpose of the proposed zoning district and shall approve the rezoning petition only if it finds that:
>
> 1. The petition is consistent with the Iowa County Comprehensive Plan and the comprehensive plan of any Town affected by said petition.
>
> 2. Adequate public facilities and services (including sewage and waste disposal, water, gas, electricity, schools, police and fire protection, and roads and transportation, as applicable) will be available as required by the petition while maintaining adequate levels of service to existing development.
>
> 3. Provisions of public facilities to accommodate the petition will not place an unreasonable burden on the ability of affected local units of government to provide the[m].

(continued)

portion of the first of the eight necessary findings: the petition must be "consistent with" the Town's "comprehensive plan."

¶29 Section 4 of the county zoning ordinance addresses CUPs. Under ZONING ORD. §§ 4.1 and 4.4, in deciding whether to grant a CUP, the P & Z Committee "shall consider" seven "requirements."[12] Regarding the specific

4. The petition will not result in significant adverse impacts upon surrounding properties or the natural environment, including air, water, noise, stormwater management, soils, wildlife and vegetation.

5. The land associated with the petition is suitable for the proposed development and said development will not cause unreasonable soil erosion or have an unreasonable adverse effect on rare or irreplaceable natural areas.

6. The petition will not be used to legitimize a nonconforming use or structure.

7. The petition is the minimum action necessary to accomplish the intent of the petition, and an administrative adjustment, variance, or Conditional Use Permit could not be used to achieve the same result.

8. The petition will not result in illegal "spot zoning" (i.e. use is inconsistent with surrounding properties and serves only a private, rather than public interest).

[12] Section 4.4 of the county zoning ordinance states in pertinent part:

In reviewing a requested conditional use permit, the Committee shall consider the following requirements:

1. The proposed use complies with all applicable provisions of this Ordinance.

2. The proposed use is compatible with adjacent legal uses in terms of scale, site design, operating characteristics (hours of operation, traffic generation, lighting, noise, odor, dust and other external impacts).

3. There are no significant anticipated measurable adverse impacts to the surrounding legal uses and environment resulting from the proposed conditional use.

(continued)

14

conditional use of a nonmetallic mine, ZONING ORD. § 4.5 contains extensive minimum standards for application, potential conditions, assurances, limitations on the period of operation, and final reclamation.

¶30     With that additional background, we conclude that the landowner fails to show that the sole basis for the County Board decision was to "effectively incorporate[] by reference" the P & Z Committee's recommendation to deny the rezone petition, which the landowner submits was a recommendation based solely on the application of the seven requirements in ZONING ORD. § 4.4.  As far as the certiorari record reveals, County Board members, acting in their legislative capacities, may have cast the votes that effectively denied the rezone petition based on at least one legal theory that was presented to the County Board and that would support denial under ZONING ORD. § 11.0.  The theory would be that the rezone petition is not consistent with at least one rationale expressed in the Town's comprehensive plan and therefore did not satisfy one of the eight necessary findings in ZONING ORD. § 11.0.   The landowner fails to show why the presumption of correctness and validity should not attach to this legislative zoning decision, nor does the landowner overcome the presumption.

---

4. Any adverse impacts resulting from the use will be mitigated or offset to the maximum practical extent.

5. Public safety, transportation, services and utility facilities exist or will be available to serve the subject property while maintaining sufficient levels of service for existing development.

6. Adequate assurances by the applicant of continuing maintenance are provided.

7. The proposed use is consistent with the Iowa County Comprehensive Plan.

¶31    Explaining our conclusion further requires reference to statements in the Town's comprehensive plan. The following two statements in the plan express what we will call "the agricultural-land rationale":

- "Continued viability of Brigham's farms depends on adequate cropland. Brigham supports development policies that maximize the preservation of available agricultural land."

- As a "20-year [v]ision" of the Town, "[n]atural beauty, agriculture, recreational opportunities, rural atmosphere[,] and a sense of community are some of the top reasons people choose to stay [in] or move into Brigham. Therefore, many residents want to keep and improve their farms, maintain their homes and property[,] and protect their investments. Existing structures will be improved and new buildings will be constructed. By achieving this future vision, Brigham will continue to appeal to residents and visitors, and in turn preserve much of its rural character. This will be accomplished by promoting orderly growth consistent with Brigham's present character, while being ever cognizant of balancing services and taxation."

¶32    To be sure, the agricultural-land rationale is stated in broad terms. But it unmistakably assigns priority to the concrete concept of "the preservation of available agricultural land," to quote the Town's comprehensive plan. More specifically, the statements may be reasonably construed to prioritize the preservation of land available for crop growing, which would exclude all land where crops cannot be grown. This could include land that is used to create and operate a quarry, a cheese factory, a public airport or airstrip, or an ethanol or bio-fuel plant. The landowner does not persuade us that members of the County Board could not reasonably rely on the agricultural-land rationale as a valid expression of the Town's objectives under applicable state statutes.[13]

---

[13] This court recently made the following pertinent observations:

(continued)

16

¶33 Expanding on this point, the landowner fails to persuade us to the contrary that the certiorari record supports a conclusion that the County Board rested its decision on the seven requirements applicable to CUP petitions in ZONING ORD. § 4.4. The record provides a reasonable basis to conclude that the County Board rested its denial on a determination that rezoning the parcel from Exclusive Agricultural to Agricultural Business would not be consistent with the Town's comprehensive plan. The determination would have been that rezoning the parcel carried too great a risk of reducing the amount of land available for crop growing, depending on the plans of its current or future landowners. And, as the County submits, this is one correct legal theory for denial under the first necessary finding contained in ZONING ORD. § 11.0, namely, inconsistency with the Town's comprehensive plan.[14]

---

> Wisconsin statutes encourage all local governments, including towns and counties, to engage in comprehensive planning. *See* WIS. STAT. § 66.1001. Generally speaking, a comprehensive plan is an advisory "guide to the physical, social, and economic development" of a community, § 66.1001(1)(a), and it includes "[a] compilation of objectives, policies, goals, maps[,] and programs" to guide such development, § 66.1001(2)(b). *See **Step Now Citizens Grp. v. Town of Utica Planning & Zoning Comm**.*, 2003 WI App 109, ¶45, 264 Wis. 2d 662, 663 N.W.2d 833 (characterizing comprehensive plans as "merely advisory" guides).

*Defend Town Plans*, 414 Wis. 2d 271, ¶4.

[14] We need not, and do not, address the Town's alternative argument to affirm on this issue, which rests on a different necessary finding for a rezone in ZONING ORD. § 11.0. The Town directs us to the fourth necessary finding, namely, that a requested rezone "will not result in significant adverse impacts upon surrounding properties or the natural environment, including air, water, noise, stormwater management, soils, wildlife and vegetation." The Town argues that this provided a legally viable basis to deny the permit, because there was substantial evidence to support a concern by the County Board about significant adverse effects on surrounding properties or the environment from using the parcel for the relatively more intensive conditional uses that are allowed on property zoned Agricultural Business, including but not limited to nonmetallic mining.

¶34    The landowner's argument that the County Board addressed the rezone petition as though it were a CUP petition rests heavily on references to statements made by members of the public and by county officials *other than* members of the County Board, as well as to events that occurred at the Town Board and P & Z Committee levels.  For example, it is true that the Town Board, in making its recommendation, specifically cited the CUP requirements and treated the blended landowner request for a rezone and a CUP as a single "quarry application."  But that is not our focus.  Our focus is on the materials that were before the County Board and the actions of the County Board.  To repeat, based on that information, County Board members could have reasonably denied the rezone petition because amending the zoning map for this parcel into the Business Agricultural district would undermine the Town's agricultural-land rationale, as expressed in the Town's comprehensive plan, by failing to sufficiently preserve land that is available for crop growing, due to the potential for any of the more intensive conditional uses that could be pursued in Business Agricultural.  This is consistent with statements by one County Board member at the initial hearing, who identified the importance of "local control," as expressed by the Town Board.  After the board member made these statements, other board members expressed support for these ideas.

¶35    The landowner fails to identify a reason for us to conclude, based on the certiorari record, that County Board members inaccurately understood that the County Board was to apply the seven requirements in ZONING ORD. § 4.4 in evaluating the rezone petition, as opposed to the eight necessary findings in ZONING ORD. § 11.0.  The landowner suggests that County Board members mistakenly believed that granting the rezone would necessarily have permitted operation of the proposed quarry, but it fails to support this suggestion.

¶36    To the contrary, the record reflects that the County Board received multiple reminders that the County Board was to make its decision based on the standards in ZONING ORD. § 11.0, and that it would be for the P & Z Committee, if the matter reached that point, to resolve a potential CUP petition based on the standards in ZONING ORD. § 4.4.  These reminders included some that came from board members themselves and from county staff.  For example, the County Board was provided with a memo from the county's legal counsel in connection with the County Board's initial hearing which accurately informed the County Board that, for the landowner to obtain a rezone under ZONING ORD. § 11.0, the landowner was required to show that all eight of the necessary findings were satisfied.  Further, at the reconsideration hearing, the County Board received not only an explicit oral recommendation from the county's legal counsel that it should rely on these necessary findings, but also a clear caution by legal counsel for the landowner that the Board was obligated to apply those standards and only those standards.

¶37    One additional strong piece of evidence showing that the County Board was on notice of a valid ground to deny the rezone petition is a detailed letter that was submitted to the County Board, in advance of the reconsideration hearing, by counsel for neighbors of the parcel who were opponents of the proposed rezone.  This letter explicitly identified the preservation of agricultural land as the pressing issue, arguing that granting the rezone would undermine the Town's comprehensive plan and that it would "open the door" to such alternative conditional uses on the parcel as an ethanol plant or an agricultural implement dealership.

¶38    It is true that multiple members of the public who spoke to the County Board raised specific objections to quarrying on the parcel, as opposed to

19

other potential conditional uses available in Business Agriculture.[15] But it is also true that at least one member of the public told the County Board that it should not grant the rezone petition because that would open the door to a range of more intensive potential conditional uses that would not be suitable for the parcel, not just nonmetallic mining. "[R]egardless of the quarry," this speaker said, amendment to Agricultural Business could mean "airports, air strips, cheese factories, implement dealerships," and "biofuel plants." Further, in a similar vein, one board member said that "we need a good societal reason to do something different than the [Town Board] has suggested" in determining that a rezone would not be consistent with the Town's comprehensive plan.[16] Further, an

---

[15] This included assertions by members of the public at the initial hearing that a quarry sited on the parcel would: be "an ugly eye sore," "massive," "pretty invasive," "a 50-year endeavor"; lower the property values of adjoining properties; create "dust," "noise," and "traffic"; have negative effects on a trout stream and horses bred in the area; ruin the parcel for farming forever, because "the earth doesn't come back" from a quarry; and was not needed because there is "currently an operating rock quarry less than a mile away." Similarly, at the reconsideration hearing, some speakers asserted that a quarry on the parcel would: drop the value of adjoining properties by "approximately 30 percent"; create problems due to blasting; negatively affect a trout stream; and blight the view of Blue Mounds State Park as "a permanent eye sore."

We observe that it was understandable for speakers to focus on the potential for quarrying. The landowner simultaneously pursued the rezone and the CUP. Further, proponents of the rezone, including the landowner, consistently argued for the specific use of quarrying as the justification for the rezone, without suggesting that the rezone petition had any other purpose. This included statements by the landowner directly to the County Board. Just as the landowner now faults Iowa County staff for treating the landowner's explicitly blended application for rezoning and a CUP as a blended request, the landowner now faults County Board members and members of the public for referring to the potential for a quarry. The landowner actively invited precisely these references from the beginning and continuing through multiple points of the process.

[16] The landowner highlights that this same board member also said that he was "inclined" to "forget about the legal nonsense." But the landowner does not explain how, under our standard of review, we could attribute to the County Board as a whole what could be reasonably interpreted as one member's expression of frustration with relatively complex legal issues. The landowner does not show that the transcript reflects an agreement by a majority of the County Board to "forget" the correct legal standards that were repeatedly provided to them.

20

attorney representing owners of property across a road from the parcel emphasized to the County Board that, in making its "legislative decision" whether to rezone the parcel, the County Board needed to make a decision "consistent with" the Town's comprehensive plan.

¶39     The landowner characterizes the concern expressed by the member of the public that a rezone could lead to various potential conditional uses on the parcel such as an airport or an implement dealership as being merely "one stray comment" from "a random member of the public."  As a basis to ignore these public comments, the landowner provides a selective quotation to a single source of binding authority, which is the proposition that "substantial evidence" to support an agency decision must be "more than a mere scintilla of evidence and more than conjecture and speculation."  *See* ***Oneida Seven Generations Corp. v. City of Green Bay***, 2015 WI 50, ¶44, 362 Wis. 2d 290, 865 N.W.2d 162 (internal quotes and quoted sources omitted).  The landowner omits statements in this same authority teaching that "the weight to accord the evidence lies within the discretion of the municipality," and that "[i]n determining whether the substantial evidence test is met, a court conducting a certiorari review should 'tak[e] into account all the evidence in the record,'" including considering all relevant context created by the evidence.  *See* ***id.***, ¶45 (quoted source omitted).  It adds nothing to the landowner's argument to refer dismissively to the member of the public as "random."  She identified herself by name, residential address, and general background, and her statement was unambiguous and concise.

¶40     The landowner asks us to reject as "vague" the statements made by County Board members in support of denial of the rezone petition based on the Town's comprehensive plan.  Perhaps the closest that the landowner comes to a developed argument on the vagueness point is to make repeated references to the

fact that both Exclusive Agricultural and Business Agricultural are farmland preservation zoning districts under WIS. STAT. ch. 91. But the landowner fails to support an argument that ch. 91 compelled the County Board, as a matter of law, to treat the two zoning districts as indistinguishable for purposes of deciding whether to rezone the parcel. Further, we discuss below why we conclude that the County Board had ample reason to distinguish between the two zoning districts for purposes of the rezone decision.

¶41     The landowner also asks us to dismiss the County Board's reliance on the Town's comprehensive plan as a "policy-laden appeal[]" to "local control." But we could not reverse the County Board based on a critique of the wisdom or desirability of a legislative determination that the rezone would not be consistent with the agricultural-land rationale in the Town's comprehensive plan. *See Buhler*, 33 Wis. 2d at 146-47.

¶42     The landowner suggests that the County Board made the specific legal error of confusing two standards: (1) the requirement in ZONING ORD. § 11.0 that the *rezone petition itself* be consistent with the Town's comprehensive plan, and; (2) the requirement in ZONING ORD. § 4.4 that the *proposed use* stated in the CUP petition be consistent with the Town's comprehensive plan. To the extent that this simply recasts the landowner's argument that the County Board applied the CUP standards, we have already rejected that contention. To the extent that this is an argument that the County Board lacked a basis to distinguish between Exclusive Agricultural zoning and Agricultural Business zoning, we now explain why we conclude the opposite.

¶43     The county zoning ordinance establishes that the purpose of the Exclusive Agricultural zoning district is "to promote uses of a generally exclusive

agricultural nature and to encourage the maintenance of historically productive and/or presently productive agricultural lands, on parcels of land of sufficient size, as a means for preserving agriculture as the primary economic base of the County." ZONING ORD. § 3.2. In contrast, the purpose of the Agricultural Business zoning district is "to provide a classification for businesses that directly support the agricultural economy." ZONING ORD. § 3.5. These purposes certainly overlap, as the landowner emphasizes. This is reflected in the fact that the permitted uses in each zoning district are similarly limited to direct agricultural uses. *See supra* note 5; ZONING ORD. §§ 3.1, 3.5. We assume without deciding that the relatively small differences in the permitted uses contained in the two zoning districts could not have provided the County Board with a basis to deny the rezone petition—or at least that these differences were not a basis on which the Board in fact rested its decision.

¶44 Yet the Board had an ample basis to conclude that, when it comes to conditional uses, the zoning districts' purposes diverge in a way that could implicate the agricultural-land rationale in connection with the proposed rezone of the parcel. In the County Board's consideration of that issue, many reasonable considerations were available to board members under the ZONING ORD. § 11.0 standards. At least one reasonable concern would be that the range of conditional uses available in Agricultural Business would be more likely to reduce available crop land than the conditional uses available in Exclusive Agricultural. The landowner makes no serious effort to argue that the range of conditional uses in each zoning district are not significantly different. Nor does it argue that conditional uses such as cheese factories and ethanol or bio-fuel plants will not necessarily reduce the amount of available crop land, at least to the extent that crops cannot be grown on land where, for example, an ethanol plant is sited.

¶45    We do not discern a developed argument by the landowner that the County Board misinterpreted its own ZONING ORD. § 11.0.  For example, the landowner does not show that the County Board could not reasonably interpret the phrase "consistent with … the comprehensive plan of any Town affected by said petition" to require consistency with the agricultural-land rationale.  In any case, such an argument would require evidence, which the landowner does not provide, that the County Board engaged in interpretation that was "contrary to law"; "clearly contrary to the intent, history, or purpose of the ordinance"; "without a rational basis"; or "directly contravenes the words of the ordinance."  *See O'Connor*, 354 Wis. 2d 231, ¶13.

¶46    The landowner initially contends that the County Board "considered the wrong question" of whether the landowner might obtain a CUP allowing quarrying if the County Board granted the rezone petition.  At least as the landowner presents the idea in its opening brief on appeal, this may suggest the position that the County Board could not take into account the differences in conditional uses between the two zoning districts in rejecting the rezone petition, because the permitted uses in the two districts are similar.  But, again, we see no reason to think that the County Board here was not free to properly take into account the conditional uses that could reduce the amount of land available for crop growing on the parcel—including but not limited to quarrying—if it were rezoned to Agricultural Business.

¶47    Indeed, as the circuit court here aptly noted in its decision, eight years ago the legislature enacted a statutory provision that had as one effect elevating the importance of zoning determinations in the context of local land use controls.  This is a provision in WIS. STAT. § 59.69 stating that local planning and P & Z Committees "shall" approve a CUP petition if all requirements and

24

conditions are met or can be met.[17] This provision created reasonable room for concern by the County Board about an increased likelihood of a crop-reducing use on the parcel caused by one of the conditional uses, depending on events following a rezone.[18] By the time of its reply brief on appeal, the landowner makes the prudent concession that "a municipality considering a rezone request can consider the availability of conditional uses" in the proposed new zoning district. We see no support in the authority cited by the landowner for a contrary position.

¶48 In sum on this issue, we conclude that the landowner fails to show that the County Board applied an incorrect legal standard.

## II. Alleged "Mandate"

¶49 As an alternative basis for reversal, the landowner argues that the County Board proceeded on an incorrect theory of law because ZONING ORD. § 11.0 "mandates" granting the rezone petition. This is so, the landowner contends, because the permitted uses in the two zoning districts are essentially the same, and therefore the county has "already legislatively determined that" the

---

[17] The provision states:

> If an applicant for a conditional use permit meets or agrees to meet all of the requirements and conditions specified in the county ordinance or those imposed by the county zoning board, the county shall grant the conditional use permit. Any condition imposed must be related to the purpose of the ordinance and be based on substantial evidence.

WIS. STAT. § 59.69(5e)(b)1 (created as part of 2017 Wisconsin Act 67).

[18] An Iowa County staff employee made this very point to the P & Z Committee: "So you could zone [the parcel] to [Agricultural Business] and likely be able to defend it[,] that you'd support Ag-related businesses there, but if then [you] were to deny the conditional use permit because of specific non-metallic mining, that might be tough to defend."

conditional uses in Agricultural Business "are compatible" with the currently allowed permitted uses.

¶50    Again here, the landowner begins with the undisputed fact that crop production, which is the single permitted use in the petitioned-for Agricultural Business, falls within one category of permitted uses under the existing Exclusive Agriculture zoning. And we again assume without deciding, in the landowner's favor, that any uses permitted under Exclusive Agricultural but not permitted under Agricultural Business do not significantly distinguish the two types of zoning districts for purposes of the rezone petition here, or at least that this was not a basis of the County Board's decision. Yet this merely returns us to the landowner's contention, which we reject for reasons stated above, that the County Board was prohibited from taking into account the new conditional uses that would be available under the Agricultural Business zoning.

¶51    Explaining further, the landowner cites authority for the undisputed proposition that a conditional use is "one that has been legislatively determined to be compatible in a particular area," but that is "not a use that is always compatible at a specific site within that area." *See AllEnergy Corp. v. Trempealeau Cnty. Env't & Land Use Comm.*, 2017 WI 52, ¶54, 375 Wis. 2d 329, 895 N.W.2d 368. Based on the fact that Iowa County has already deemed the parcel to be compatible with agricultural permitted uses by placing it in the Exclusive Agricultural district, the landowner contends that the County Board is now compelled to leave exclusively for the P & Z Committee any and all consideration of the potential for compatible conditional uses on the parcel if it were placed in the Agricultural Business district. The landowner broadly asserts that the potential for this new range of conditional uses on the parcel could not "even be relevant" to the eight necessary findings for a rezone contained in ZONING ORD. § 11.0.

¶52     But neither *AllEnergy* nor any other authority cited by the landowner supports this theory, and it is inconsistent with our standard of review. As noted in the prior subsection of this opinion, at least by the time of its reply brief on appeal, the landowner concedes that the County Board could consider, as part of its rezone decision, the potential availability of conditional uses on the parcel if it were rezoned to Agricultural Business. With that concession, the landowner's argument amounts to a request that we substitute the landowner's own view for that of the County Board on at least the following set of topics: the risks of a reduction in available cropland on the parcel, based on an assessment of the likelihood of, and the effects of, various conditional uses that would potentially become available on the parcel in the event of a rezone. As with the variation on this argument that we reject above, here again the landowner advocates a highly formalistic approach that is not supported by legal authority. Under this approach, the County Board could not consider the range of potential conditional uses that could occur on the parcel following a rezone that the County Board might determine pose a risk of reducing available cropland.

**III. Constitutional Challenge**

¶53     The landowner's remaining alternative ground for reversal is that denial of the rezone petition violated the landowner's substantive due process rights because of "the way the County has chosen to set up" the Exclusive Agricultural and Agricultural Business zoning districts. Even if we were to deem this argument sufficiently developed, it would lack merit. The following are sufficient points to reject the argument.

¶54     Under the landowner's approach, as long as two zoning districts have closely matching permitted uses, every parcel in either district must

automatically, as a matter of constitutional law, be entitled to rezoning to the other district—even if the rezone would open the door to the potential for any amount or types of conditional uses.

¶55    It appears that the starting point for this argument is *Town of Rhine*, an opinion that is based on the undisputed right of landowners to substantive due process in zoning cases. *See Town of Rhine*, 311 Wis. 2d 1, ¶29. But *Town of Rhine* did not involve a rezone petition. Instead, our supreme court determined that a municipal code establishing a town zoning district was facially unconstitutional because no permitted use whatsoever was allowed in the zoning district, without sufficient justification, and because it allowed conditional uses only under "generalized standards." *Id.*, ¶¶34, 64. "No reasonable justification exists for such excessive government control and restriction—especially when that government control is set against land use rights, and the control bears no substantial relation to the public health, safety, morals[,] or general welfare." *Id.*, ¶62. The court rejected arguments by the town that the zoning district in fact allowed permitted uses and that uses which the town labeled as "conditional" actually functioned as permitted uses. *Id.*, ¶¶54-60. In "limited circumstances"— such as a zoning district covering a flood plain—a "no permitted uses" zoning district might be justified. *Id.*, ¶¶43-47. The problem for the town in *Town of Rhine* was that it failed to identify a basis in health, safety, morals, or general welfare interests that could justify precluding *any* permitted use. *Id.*, ¶47.

¶56    The landowner fails to sensibly apply any statement in *Town of Rhine* to the facts here. In Iowa County, there is at least one permitted use in both Exclusive Agricultural and Agricultural Business. Therefore, this is not a "no permitted uses" case like *Town of Rhine*. The landowner asserts, without providing support, that *Town of Rhine* stands for the proposition that all

challenges to the constitutionality of a zoning ordinance—or perhaps all challenges to the constitutionality of any local agency decision related to a zoning ordinance—must turn on the potential permitted uses and that potential conditional uses are always immaterial. To cite only one shortcoming of this argument, the landowner fails to come to grips with the touchstone of the analysis in *Town of Rhine*, which involves potential justification based on health, safety, morals, or general welfare interests in the community. The agricultural-land rationale discussed above easily satisfies this standard.

¶57 The landowner attempts to bolster its constitutional argument by taking out of context and embellishing on one statement in *Schmeling v. Phelps*, 212 Wis. 2d 898, 917, 569 N.W.2d 784 (Ct. App. 1997). In the pertinent portion of *Schmeling*, this court determined that a county executive's veto of a rezone petition was subject to court review in the same manner and according to the same standards of review as is a county board's failure to approve a rezone petition. *Id.* at 902, 911-13. In the course of that discussion, we addressed and rejected the county executive's positions that his veto was a discretionary act for which he was immune under WIS. STAT. § 893.80(4) (1997-98), and that separation of powers also created a bar to judicial review. *Schmeling*, 212 Wis. 2d at 911. The court in *Schmeling* then pointed out that it was not presented with "'general' legislation," in which immunity from judicial review might be appropriate, but instead "a zoning action." *Id.*

¶58 It was in this specific immunity context that the court stated the following: "Zoning actions, however, because they affect the property rights of specific individuals, have traditionally been treated differently than general municipal legislation under both statute and case law." *Id.* at 911-12. This statement was immediately followed by citation to WIS. STAT. § 59.69(14) (1997-

29

98), which permitted actions by landowners in certain circumstances, and a citation to **Buhler** for the proposition that the decision of a county board to deny a rezone petition is subject to court review. **Schmeling**, 212 Wis. 2d at 912. The court went on to emphasize that, under the highly deferential **Buhler** standards of review for legislative zoning decisions that we summarize earlier in this opinion, "judicial review is very limited." **Schmeling**, 212 Wis. 2d at 912-13. Thus, the "treated differently" concept in **Schmeling** unambiguously refers to the *availability of judicial review* and does not alter the standard of review for zoning decisions.

¶59      With that background, the landowner now reproduces the sentence from **Schmeling** that we have just quoted, but the landowner inserts the phrase "and more critically," between the words "differently" and "than" (albeit excluding its insertion from the portions shown between quote marks), with the following result: "And rezone decisions like the one here that 'affect the property rights of specific individuals' 'have traditionally been treated differently'—and more critically—'than general municipal legislation under both statute and case law.' **Schmeling**, 212 Wis. 2d at 911-12." **Schmeling** does not, as the landowner attempts to suggest, create a different standard of review from the deferential **Buhler** standards cited above.

## CONCLUSION

¶60      For all these reasons, we affirm the circuit court decision upholding the County Board's denial of the landowner's rezone petition.

*By the Court*.—Order affirmed.

Recommended for publication in the official reports.

30