COURT OF APPEALS
DECISION
DATED AND FILED

June 11, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP825**

Cir. Ct. No. **2024CV549**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

ADAMS OUTDOOR ADVERTISING
LIMITED PARTNERSHIP,

PETITIONER-APPELLANT,

V.

CITY OF MADISON AND CITY OF MADISON
URBAN DESIGN COMMISSION,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: SUSAN M. CRAWFORD, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Taylor, JJ.

¶1      GRAHAM, P.J.  This appeal arises from a certiorari petition that Adams Outdoor Advertising ("Adams") filed to challenge a decision made by the City of Madison's Urban Design Commission (the "UDC").[1]  In its decision, the UDC affirmed an official notice issued by the City's zoning administrator that ordered Adams to discontinue the digital features of a billboard that Adams operates in the City of Madison.  The zoning administrator determined that the digital features of the billboard must be discontinued because those features violate a citywide ordinance that bans digital signs.

¶2      Although it is undisputed that the billboard's digital features violate the city ordinance, Adams argues that it can continue to operate its digital billboard, despite the ordinance violation, because the digital features have "legal nonconforming use" status under WIS. STAT. § 62.23(7)(h) (2023-24).[2]  On appeal, Adams argues that the UDC's decision to affirm the official notice was erroneous because the UDC failed to consider Adams' argument about legal nonconforming use.

¶3      We conclude that the UDC erred when it declined to consider the basis for Adams' challenge to the official notice.  However, we also conclude that the concept of legal nonconforming use does not apply to the ordinance in question.  WISCONSIN STAT. § 62.23(7)(h) may exempt structures such as the billboard from compliance with provisions in a municipal ordinance only if the

---

[1]  Pursuant to CITY OF MADISON GENERAL ORDINANCE § 33.24 (2013), the proper name of the body is the Urban Design Commission, and we amend the caption accordingly.  We will refer to an individual ordinance as an "MGO."  All references to the City of Madison General Ordinances are to the 2013 register.

[2]  All references to the Wisconsin Statutes are to the 2023-24 version.

ordinance in question is a zoning ordinance. Based on our analysis of the framework set forth by our supreme court in *Zwiefelhofer v. Town of Cooks Valley*, 2012 WI 7, 338 Wis. 2d 488, 809 N.W.2d 362, we conclude that the ordinance banning digital signs is not a zoning ordinance; therefore, § 62.23(7)(h) does not apply. We affirm.

## BACKGROUND

¶4 Adams originally constructed the billboard at issue in 1999. At that time and up until 2022, the parcel on which the billboard was constructed was not located in the City of Madison (the "City"). The parcel was instead located in the Town of Madison, which was a separate municipality.

¶5 The billboard did not have digital features when it was originally constructed. Adams converted it into a digital billboard in 2006. At all times following the conversion, the billboard's display has consisted of a large electronic screen that presents dynamic, computer-controlled advertisements and content. It is undisputed that the Town of Madison's ordinances allowed digital billboards when the conversion took place in 2006, and that Adams' digital billboard complied with the Town of Madison's ordinances.[3]

---

[3] The parties agree that during this period, Adams' billboard was also subject to applicable Dane County ordinances. When Adams converted its billboard to a digital billboard in 2006, it was not in compliance with the applicable county ordinances, which prohibited electronic signs of this kind. In 2012, Adams reached a settlement with Dane County that allowed Adams to maintain its digital billboard. Specifically, that settlement provided that "[Dane] County acknowledges and agrees that such [digital billboard] shall hereafter be regarded by the County as legal and nonconforming" and that "Adams' digital sign … in the Town of Madison may remain up as is indefinitely and hereafter."

(continued)

3

¶6 In 2022, the City absorbed part of the Town of Madison through a process called "attachment," and following the attachment, Adams' digital billboard became subject to the City's ordinances. These ordinances include the "Sign Control Ordinance," which is found in Madison General Ordinances Chapter 31 and governs the type, height, size, location, and visual display of signs within the City. Among other things, the sign control ordinance references geographical districts that are defined in other ordinances, including Madison's zoning ordinances, and the regulations to which a sign is subject depend at least in part on the district in which the sign is located.

¶7 As pertinent to this appeal, the sign control ordinance also contains a citywide ban on digital signs. This ban, which we refer to as the "digital sign ban," provides that "Digital Image Signs … are prohibited," whether they are "static or animated." *See* MGO § 31.045(3)(i). It is undisputed that Adams' billboard qualifies as a "Digital Image Sign."[4]

¶8 In September 2023, the zoning administrator for the City sent Adams an "Official Notice" that its billboard violates the digital sign ban. The notice stated that Adams was required to "[d]iscontinue the display of any Digital Image

---

The parties dispute the effect of this settlement agreement, and more specifically, whether it means that Adams' operation of the billboard was "lawful" such that Adams would be afforded protection under WIS. STAT. § 62.23(7)(h). We need not resolve this dispute because, as we discuss below, we conclude that § 62.23(7)(h) does not apply on other grounds. *See **Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

[4] Specifically, MGO § 31.03(2) provides that a "Digital Image Sign (Static)" is "[a] sign, any portion of which displays static or stationary illuminated digital images, produced by technology such as LED (light emitting diode) or LCD (liquid crystal display) display screens, plasma, high-definition, interactive touch-screen, or other such technology," and that a "Digital Image Sign (Animated)" is "[a] Digital Image Sign as defined above, any portion of which is capable of producing an animated or moving digital or video image."

Sign features," and it informed Adams that the case might be referred to the office of the city attorney for prosecution if Adams failed to comply.

¶9 Adams sought to challenge the zoning administrator's decision, and the City informed Adams that it could do so by submitting an appeal to the UDC. Pursuant to MGO § 31.043(1), "the UDC shall hear and decide appeals of decisions of the Zoning Administrator where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of this chapter and, where applicable, Official Notices." Here, the parties do not dispute that Adams could use the process outlined in MGO § 31.043(1) to challenge the official notice it received. What is disputed is the scope of the UDC's appellate review of the zoning administrator's decision under MGO § 31.043(1).

¶10 In its appeal to the UDC, Adams argued that the zoning administrator issued the official notice in error because Adams had "vested and lawful nonconforming rights" to operate its digital billboard pursuant to WIS. STAT. § 62.23(7)(h), even though the billboard violates the digital sign ban. As we discuss in more detail below, § 62.23(7)(h) can curtail a municipality's ability to enforce zoning ordinances against certain preexisting structures. Specifically, the statute provides that the "continued lawful use of a … structure … existing at the time of the adoption or amendment of a zoning ordinance may not be prohibited although the use does not conform with the provisions of the ordinance." § 62.23(7)(h). Adams argued that § 62.23(7)(h) allowed it to "maintain the billboard at issue" because the digital sign ban "is a zoning ordinance," and because its billboard is a structure that was "legally established" before it became subject to the digital sign ban. Therefore, Adams argued, the City could not

5

require it to discontinue the digital features of its billboard without "just compensation."

¶11    In its response, the City argued that WIS. STAT. § 62.23(7)(h) does not apply because the digital sign ban is not a zoning ordinance. Among other things, the City stated that it does not regulate signs, including billboards, "as a zoning use." The City stated that it had chosen to regulate signs through its "non-zoning police power" rather than through its "zoning power."

¶12    The City also took a position that, if accepted, would prevent the UDC from deciding the issue at all. Specifically, the City argued that the UDC's scope of review was limited, and that the UDC lacked authority to consider whether the digital sign ban is a zoning ordinance. In its brief, the City asserted that the only role for the UDC in this case was to determine whether Adams' billboard was a "digital sign" within the meaning of the sign control ordinance, whether the billboard was "operating as digital on the date of the notice," and whether operation of the digital billboard "violate[d] a[ny] [c]ity ordinance."

¶13    The UDC held a hearing on Adams' appeal in January 2024. Much of the discussion at the hearing focused on the appropriate scope of the UDC's review. The majority of the members took the position that the UDC's review was limited to evaluating whether the zoning administrator's interpretation and application of the digital sign ban was correct. One member stated, "I don't think we're deciding" whether the digital sign ban is a "zoning ordinance." Another member took a contrary position, arguing that the UDC could not decide whether "to reverse … or to affirm" the zoning administrator's decision without considering whether the administrator's decision was "in compliance" with applicable law, including considering whether the digital sign ban is a zoning

ordinance and whether the legal nonconforming use provision of WIS. STAT. § 62.23(7)(h) applies.

¶14 Ultimately, the UDC voted to uphold the zoning administrator's issuance of the official notice. Specifically, the UDC determined that "the [billboard] is a digital sign"; that "[the billboard] violates City ordinance"; and that "[t]he Zoning Administrator's notice complies with the ordinance and … was not in error." Consistent with the opinion expressed by the majority of the UDC members about its limited scope of review, the UDC did not address Adams' arguments that the digital sign ban is a zoning ordinance and that WIS. STAT. § 62.23(7)(h) exempts Adams from complying with the ban.

¶15 Adams filed a summons and complaint seeking certiorari review of the UDC's decision in the circuit court. *See* WIS. STAT. § 68.13(1); MGO § 31.043(5). In its petition, Adams argued that the UDC proceeded on an incorrect theory of law by failing to consider the "threshold issue" of whether the digital sign ban is a zoning ordinance. Adams further argued that this threshold issue should be resolved in its favor. According to Adams, "it is apparent the sign ordinance is a zoning ordinance," and the court should "overturn the decision of the UDC and recognize Adams' right to maintain the Billboard as a legal nonconforming use under WIS. STAT. § 62.23(7)(h)."

¶16 The circuit court affirmed the UDC's decision based on the court's conclusion about the scope of UDC review. More specifically, the court stated that MGO § 31.043 provides the UDC with "limited review" authority, and that

"asking the UDC to declare [the digital sign ban] a zoning ordinance is demanding more than the [UDC] can provide."

¶17 Adams appeals.[5] We held oral argument on the appeal.

## DISCUSSION

¶18 Certiorari is an appropriate mechanism to challenge the validity of local government decisions. *Ottman v. Town of Primrose*, 2011 WI 18, ¶34, 332 Wis. 2d 3, 796 N.W.2d 411. When considering an appeal of a circuit court's certiorari decision, we review the decision of the local governing body, not the decision of the circuit court. *Miller v. Zoning Bd. of Appeals of Lyndon Station*, 2022 WI App 51, ¶29, 404 Wis. 2d 539, 980 N.W.2d 295 (*Miller I*), *affirmed by* 2023 WI 46, 407 Wis. 2d 678, 991 N.W.2d 380 (*Miller II*). In such an action, we are confined to the record before the local body at the time of its decision, *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson Cnty. Bd. of Adjustment*, 131 Wis. 2d 101, 119, 388 N.W.2d 593 (1986), and our scope of review is limited to the following: whether the local body kept within its jurisdiction; whether it proceeded on a correct theory of law; whether the local body's action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and whether the evidence was such that the local body might reasonably

---

[5] The City's brief does not comply with WIS. STAT. RULE 809.19(8)(bm), which addresses the pagination of appellate briefs. *See* RULE 809.19(8)(bm) (when paginating briefs, parties should use "Arabic numerals with sequential numbering starting at '1' on the cover"). This rule was amended to its current form in 2021. *See* S. CT. ORDER 20-07, 2021 WI 37, 397 Wis. 2d xiii (eff. July 1, 2021). The reason for the amendment is that briefs are now electronically filed in PDF format, and are electronically stamped with page numbers when they are accepted for efiling. The pagination requirements ensure that the numbers on each page "will match ... the page header applied by the eFiling system, avoiding the confusion of having two different page numbers" on every page of a brief. Supreme Court Note, 2021, RULE 809.19.

make the determination in question. *Miller I*, 404 Wis. 2d 539, ¶29 (citations omitted).

¶19 Here, there is no dispute that Adams' digital billboard qualifies as a digital sign that violates the City's digital sign ban. The core dispute between the parties is whether Adams is exempt from complying with the digital sign ban because the ban is a zoning ordinance and the billboard is a legal nonconforming structure under WIS. STAT. § 62.23(7)(h). The UDC did not consider those questions in its review of the zoning administrator's decision because it concluded that the inquiries were outside the scope of its review.

¶20 On appeal, the parties dispute whether the UDC's determination about its limited scope of authority is correct, and we begin our analysis with that threshold question. After concluding that the UDC had the authority to consider Adams' claim about WIS. STAT. § 62.23(7)(h), we address the claim on the merits.

## I. The UDC's Authority

¶21 The parties agree that the scope of the UDC's review turns on the proper interpretation of MGO § 31.043(1). Thus, the precise question before us is whether, pursuant to that ordinance, the UDC has the authority to consider the legal issue at the core of Adams' appeal: that is whether the zoning administrator erred in enforcing the digital sign ban against Adams because the ban is a zoning ordinance that Adams is exempt from complying with pursuant to WIS. STAT. § 62.23(7)(h).

¶22 The interpretation of an ordinance is a question of law that we consider de novo. *See Milwaukee Dist. Council 48 v. Milwaukee County*, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153. In interpreting municipal

ordinances, we apply the "same principles" used in statutory interpretation. ***Id.*** Thus, our interpretation begins with the language of the ordinance. *See **State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. We give the language its "common, ordinary, and accepted meaning," ***id.***, and if the meaning of the language is plain, we apply the ordinance as written, ***id.***, ¶46. If the language in an ordinance is ambiguous, we "consult extrinsic sources of interpretation, such as legislative history," to determine the ordinance's meaning. ***Id.***

¶23 As noted, MGO § 31.043(1) designates the UDC as the body responsible for handling appeals of decisions of the zoning administrator. It provides in relevant part as follows:

> The UDC shall hear and decide appeals of decisions of the Zoning Administrator where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of this chapter and, where applicable, Official Notices issued by the Building Inspection Division or the Zoning Administrator relating to signs under this chapter.

¶24 This language provides a broad grant of authority to the UDC to review legal and factual determinations that the zoning administrator makes with respect to signs. As relevant here, all that MGO § 31.043(1) requires for an appeal to fall within the UDC's purview is that an appellant seeks to challenge an "error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of" the sign control ordinance. Section 31.043(1) further specifies that such errors include those made in "Official Notices issued by … the Zoning Administrator relating to signs under this chapter." Here, there can be no dispute that Adams' challenge falls within these broad parameters. Adams alleged that the zoning administrator made an error, and

that error was the decision to issue an official notice with respect to its billboard. That is, the issuance of the notice constituted the administrator's determination that Adams' billboard is required to comply with the digital sign ban, and Adams alleges that that determination was erroneous because the billboard qualifies as a legal nonconforming use. Based on the unambiguous language of MGO § 31.043(1), Adams' claim that its billboard is exempt from the digital sign ban appears to be squarely within the unambiguous language describing the UDC's authority.

¶25 We now consider several arguments that the City makes to the contrary.

¶26 As we best understand it, one argument that the City makes is that the UDC does not have the authority to consider any claims of error that would take the UDC outside of the four corners of the sign control ordinance. The City points out that MGO § 31.043(1) focuses on whether there was an "error"; according to the City, this would, at most, implicate review of the zoning administrator's factual determinations and the zoning administrator's interpretation of the sign control ordinance itself. The City asserts that there is "nothing" in MGO § 31.043(1) that "explicitly says, or even hints, that the UDC should make a legal interpretation on the scale asked by Adams."

¶27 To be sure, MGO § 31.043(1) limits the UDC's review to errors that the zoning administrator "made … in the enforcement of this chapter," and, at first blush, this phrase could lend some support to the City's argument. That is, we could see a plausible argument that, reading this phrase in isolation, the UDC's review is limited to considering only those matters that are within the four corners of the sign control ordinance itself. However, when read in context, MGO

11

§ 31.043(1) is much broader, and authorizes the UDC to review "*any … decision or determination made by the Zoning Administrator in the enforcement of this chapter.*" This phrase plainly encompasses Adams' claim of error here. That is, if the zoning administrator's "decision" to enforce the digital sign ban conflicts with state law, as Adams alleges, that would qualify as an error that the zoning administrator made in the enforcement of "this chapter." As the City conceded at oral argument, there is no language in MGO § 31.043(1) that limits or prohibits the UDC from considering legal arguments such as these in the course of its review of whether the zoning administrator erred.[6]

¶28     Our interpretation of MGO § 31.043(1) is consistent with case law that has interpreted language almost identical to MGO § 31.043(1). *See Berkos v. Shipwreck Bay Condo. Ass'n.*, 2008 WI App 122, ¶8, 313 Wis. 2d 609, 758 N.W.2d 215 ("Also relevant to a statute's plain meaning is prior case law interpreting the statute."). In *Osterhues v. Board of Adjustment for Washburn County*, 2005 WI 92, ¶30, 282 Wis. 2d 228, 698 N.W.2d 701, our supreme court interpreted a board of adjustment's authority under WIS. STAT. § 59.694(7)(a). That statute authorizes the board "[t]o hear and decide appeals where it is alleged there is error in an order, requirement, decision or determination made by an administrative official in the enforcement of [WIS. STAT. §] 59.69 or of any ordinance enacted pursuant thereto." Our supreme court reasoned that the language in § 59.694(7)(a) did not impose any limit on "the type of error that a

---

[6] At oral argument we asked the City's attorney the following: "Is there language in [MGO] § 31.043 that says this is outside of the [UDC's] authorit[y] o[n] appeal? Is there any law that you can point to that says, yes, this supports my opinion that UDC couldn't decide it?" The City's attorney responded: "No, there's nothing in the ordinances that says they can't. And honestly, if they wanted to delve into legal issues, they could."

board may review," and that an aggrieved party may allege a "procedural, substantive, or equitable" error in its appeal. *Id.* As with § 59.694(7), MGO § 31.043(1) does not impose any qualification on the type of error that the UDC is permitted to consider. Accordingly, we see insufficient support for the City's argument that the UDC did not have the authority to consider an error that turned on legal issues that took the UDC outside of the sign control ordinance.[7]

¶29 The City also appears to argue that, even if the UDC had the authority to consider Adams' arguments about WIS. STAT. § 62.23(7)(h), it was not necessarily required to do so. As we best understand, the City's position is that the UDC has discretion with respect to the arguments it wants to consider when reviewing the Zoning Administrator's decisions.

¶30 Although the City does not point us to any language from MGO § 31.043(1) to support this argument, we do not entirely disagree with one of its underlying premises. As a body charged with hearing and deciding appeals, the UDC will not always be required to consider each and every alleged error brought

---

[7] The City argues that the decision in *Osterhues v. Board of Adjustment for Washburn County*, 2005 WI 92, 282 Wis. 2d 228, 698 N.W.2d 701 is inapt because the UDC is "not comparable" to a "board of adjustment." In support, the City points out that a board of adjustment "has inherent authority" to undertake many actions that the UDC cannot, and the City specifically highlights WIS. STAT. § 59.694(8), which provides that a board of adjustment "shall have all the powers of the officer from whom the appeal is taken." The City further points out that the *Osterhues* court relied in part on § 59.694(8) when it determined that the board of adjustment had the authority to consider errors that were "procedural, substantive, or equitable." *Osterhues*, 282 Wis. 2d 228, ¶30. As best we understand, the City is arguing that, because the UDC is not endowed with the same powers as a board of adjustment, and in particular the power outlined in § 59.694(8), *Osterhues* does not support our interpretation of the UDC's authority.

We reject the City's argument. Although the *Osterhues* court also relied on another provision with different language to support its conclusion, the court determined that WIS. STAT. § 59.694(7)(a) itself—the provision with almost identical language to MGO § 31.043(1)—does not contain any language that "limit[s] the type of error that a board may review." *Osterhues*, 282 Wis. 2d 228, ¶30. We consider *Osterhues* persuasive for this reason.

---

13

before it. In some cases, the UDC might reasonably conclude that one or more issues are dispositive, and in those circumstances, the UDC could fulfill its mandate to "make a final decision on the appeal"—that is, to decide whether to affirm or reverse the zoning administrator's decision—without delving into other alleged errors that are not dispositive. *See* MGO § 31.043(1). Indeed, judicial bodies often engage in the practice of declining to consider non-dispositive issues when making decisions. *See, e.g.*, ***Barrows v. American Fam. Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

¶31 However, in this case, the UDC did not affirm the zoning administrator's decision to issue the official notice based on any determination of an issue that was dispositive of Adams' appeal. Rather, it wholly declined to consider the legal argument that Adams was making, which was the sole basis for Adams' challenge to the official notice. In other words, the UDC did not fulfill its mandate to "hear" Adams' appeal, given that it declined to consider, much less resolve, the sole disputed issue that was pertinent to a determination of whether the zoning administrator erred.

¶32 The City's final argument about the scope of UDC authority is a policy argument, which is based on the City's assertion that it would be unwise to have these types of issues addressed by the UDC. As we understand it, the UDC is primarily composed of design professionals, and its members may not be accustomed to the task of applying Wisconsin statutes and case law to make legal determinations about the nature of zoning. The City argues that the composition of the UDC makes it poorly equipped to evaluate whether the digital sign ban is a zoning ordinance, and at oral argument, the City posited that such questions are more appropriately resolved by a zoning board. According to the City, an

interpretation of MGO § 31.043(1) that would allow the UDC to consider substantive legal questions such as these "would send us on a trajectory that makes no sense."

¶33    We see at least two problems with the City's policy-based argument. First, our interpretation of MGO § 31.043(1) turns on its language, and not on our evaluation of the wisdom or folly of the policy choices it encompasses. *See **Kalal***, 271 Wis. 2d 633, ¶45.  As noted, the City conceded at oral argument that there is no language in MGO § 31.043(1) that supports its interpretation that the UDC's scope of review is limited.  Second, if the City determines that a zoning board would be better equipped to tackle such inquiries, the City is free to amend its ordinances to provide that review of such questions must be by a zoning board.

¶34    Accordingly, for all these reasons, we conclude that the UDC had authority to consider the legal questions about the nature of zoning and WIS. STAT. § 62.23(7)(h) that are at the core of Adams' appeal.  Thus, the UDC proceeded on an incorrect theory of law when it declined to consider these issues on the grounds that it did not have authority to do so.

## II.  WISCONSIN STAT. § 62.23(7)(h)

¶35    We now turn to the merits of Adams' argument that its digital billboard is exempt from complying with the digital sign ban pursuant to WIS. STAT. § 62.23(7)(h).  Although we could remand for the UDC to make this determination, the application of § 62.23(7)(h) is a legal question that we would consider independently of the UDC, even if the UDC had addressed the issue. Additionally, the parties do not dispute that the record is sufficiently developed for us to decide the issue without a remand to the UDC.  We therefore address the application of § 62.23(7)(h) in this case.

¶36 WISCONSIN STAT. § 62.23(7)(h) provides that "the continued lawful use of a … structure … existing at the time of the adoption or amendment of a zoning ordinance may not be prohibited although the use does not conform with the provisions of the ordinance." As noted, Adams' position is that § 62.23(7)(h) exempts its billboard from conforming to the digital sign ban because the ban is a zoning ordinance and Adams' use of the digital features of the billboard qualifies as a legal nonconforming use under § 62.23(7)(h). In response, the City argues that § 62.23(7)(h) does not apply because, among other things, the digital sign ban is not a zoning ordinance, and that the City instead passed the ordinance pursuant to its non-zoning police powers.

¶37 We therefore begin our analysis with the threshold question of whether the digital sign ban is in fact a zoning ordinance. Whether a particular ordinance constitutes a zoning ordinance is a question of law. *Zwiefelhofer*, 338 Wis. 2d 488, ¶20.

¶38 *Zwiefelhofer* is the most prominent recent Wisconsin case to address the nature of zoning and its relationship to a broader set of police powers that can be exercised by a municipality. As *Zwiefelhofer* explains, municipal governments are given broad police powers to promote public safety, health, and welfare. *Id.*, ¶5; *see also id.*, ¶5 n.5 (citing *Wind Point v. Halverson*, 38 Wis. 2d 1, 8, 155 N.W.2d 654 (1968)); WIS. STAT. § 62.11(5) (describing a city's police powers). One way a municipality can choose to promote these goals is by passing a zoning ordinance. However, the power to pass zoning ordinances is just one "subset" of a municipality's police powers. *Zwiefelhofer*, 338 Wis. 2d 488, ¶31. A municipality can also promote public safety, health, and welfare by using its non-zoning police powers to pass ordinances that are not considered to be zoning. *Id.*

¶39 The *Zwiefelhofer* court specifically noted "the similarity and potential overlap between zoning ordinances and non-zoning police power ordinances." *Id.*, ¶6. As the court explained, the zoning power and non-zoning police power "are obviously closely related." *Id.*, ¶31. The "'line distinguishing general police power regulation from zoning ordinances is far from clear,'" and "identifying an ordinance as a zoning ordinance is not necessarily a simple task." *Id.*, ¶33 (citation omitted). Even so, it can be important to distinguish between uses of zoning power and non-zoning police power because "the legislature imposes different procedural requirements on these two forms of ordinances," and the validity of an ordinance can be challenged if the municipality does not use the correct procedure to enact it. *Id.*, ¶6; *see also id.*, ¶6 n.6 (citing 1 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning,* § 1:10 (2011)). Additionally, as this case illustrates, legal nonconforming use status is implicated when a municipality passes a zoning ordinance, but it is not implicated when a municipality passes a similar ordinance through its non-zoning police power.

¶40 The facts of *Zwiefelhofer* are instructive. There, the town passed a non-metallic mining ordinance using its non-zoning police power. *Zwiefelhofer*, 338 Wis. 2d 488, ¶¶13-14. The ordinance constituted a pervasive regulation of the use of land, *id.*, ¶¶15-16, and property owners in the town challenged its validity, *id.*, ¶1. The property owners argued that the ordinance was effectively a zoning ordinance, and that it was invalid because the town did not follow the legislatively mandated zoning procedures when it enacted the ordinance. *Id.*, ¶2.

¶41 In addressing the property owners' challenge, our supreme court acknowledged the significant overlap between the zoning and non-zoning police powers. *Id.*, ¶27. And it explained that "simply because an ordinance *could* qualify as a zoning ordinance does not mean it *must* be adopted as a zoning

ordinance," nor that "zoning is necessarily the *only* avenue available … to enact the regulation." *Id.*, ¶31 n.14 (emphasis added). The town had chosen to enact the non-metallic mining ordinance using its non-zoning police authority. Therefore, the court explained, the question was whether the ordinance was a valid exercise of that authority, or whether the ordinance instead shared so many of the traditional characteristics of zoning that it could be validly enacted only through the use of the town's zoning power. *Id.*, ¶¶31, 79.

¶42 To answer that question, the *Zwiefelhofer* court analyzed the challenged ordinance in light of characteristics that are traditionally associated with zoning ordinances. *Id.*, ¶8. As later summarized by our supreme court in *State ex rel. Anderson v. Town of Newbold*, 2021 WI 6, ¶40, 395 Wis. 2d 351, 954 N.W.2d 323, these characteristics are:

> (1) zoning ordinances typically divide a geographic area into multiple zones or districts; (2) within the established districts or zones, certain uses are typically allowed as of right and certain uses are prohibited; (3) zoning ordinances are traditionally aimed at directly controlling where a use takes place as opposed to how it takes place; (4) traditionally classifying uses in general terms, zoning ordinances attempt to comprehensively address all possible uses in the geographic area; (5) zoning ordinances traditionally make a fixed, forward-looking determination regarding what uses will be permitted as opposed to case-by-case determinations; and (6) traditional zoning ordinances allow certain landowners whose land use was legal prior to the adoption of the zoning ordinance to maintain their land use despite its failure to conform to the ordinance.

*Anderson*, 395 Wis. 2d 351, ¶40 (citing *Zwiefelhofer*, 338 Wis. 2d 488, ¶¶36-42 (internal citations omitted)). When the *Zwiefelhofer* court evaluated the town's non-metallic mining ordinance in light of these characteristics, the court determined that this is "not a case in which the [t]own is evading the procedural

requirements of zoning by adopting a plethora of ordinances that, taken together, achieve results so similar to a traditional zoning ordinance that they must be treated as such." *Id.*, ¶79. In other words, the non-metallic mining ordinance was not so quintessentially an exercise of zoning authority that the town had no choice but to enact it as a zoning ordinance.

¶43 Here, like in *Zwiefelhofer*, it is undisputed that the City chose to enact both the sign control ordinance and the digital sign ban it contains pursuant to the City's non-zoning police powers.[8] The parties dispute whether the digital sign ban constitutes a proper exercise of the City's "non-zoning police power," or whether the ban is so quintessentially an exercise of zoning authority that it must be treated as a zoning ordinance.

¶44 The parties agree that an analysis of the six characteristics set forth in *Zwiefelhofer* should guide our determination of whether the digital sign ban is a zoning ordinance, but they dispute how those factors should be applied here. In particular, they dispute the proper scope of the inquiry, and specifically whether we must focus exclusively on the digital sign ban itself when we consider the *Zwiefelhofer* framework, or whether we should also consider other provisions in the sign control ordinance of which the ban is a part. At oral argument, we asked the parties to elaborate on their respective positions and to provide clarity on the

---

[8] At oral argument, we asked the City's attorney whether the sign control ordinance was passed according to zoning procedures. The attorney represented that she knew "it was not," and further represented that, when the ordinance was passed in 2009, the City made the choice to enact it pursuant to its non-zoning police powers. The City attorney's representation at oral argument is consistent with a drafter's analysis that was submitted to the mayor and common council in 2009, prior to the enactment of the sign control ordinance. Among other things, that analysis provided that "signs are not regulated under the zoning powers of the city, but rather under the city's general police powers."

scope of the *Zwiefelhofer* analysis. Neither party presented us with a clear and persuasive answer, but we reach the following conclusions after considering their arguments.

¶45 If we consider the digital sign ban in isolation, the *Zwiefelhofer* framework does not support a conclusion that it must be treated as a zoning ordinance. As noted, the digital sign ban prohibits all "Digital Image Signs, … whether static or animated." *See* MGO § 31.045(3)(i). Thus, unlike a traditional zoning ordinance, the digital sign ban does not divide the city "into multiple zones or districts," nor does it attempt to "comprehensively address all possible uses in a geographic area," and it does not allow a digital sign to continue to operate despite not "conform[ing] to the ordinance." *See Anderson*, 395 Wis. 2d 351, ¶40. Nor does the ban focus on "controlling where a use takes place as opposed to how it takes place." *Id.* To the contrary, digital image signs are prohibited citywide; therefore, whether the ban prevents a message from being displayed turns on "how" the party chooses to display that message—that is, by use of digital or non-digital means. The only arguable similarity between the digital sign ban and a traditional zoning ordinance is that the ban makes a "fixed determination" about digital image signs, rather than relying on "case-by-case" determinations. *Id.* Given that the digital sign ban lacks so many of the characteristics of a traditional zoning ordinance, we are not persuaded that the ban is an exercise of the City's zoning power when we consider the ban in isolation.

¶46 But even when we zoom out and consider the digital sign ban in context with the entirety of the sign control ordinance (Madison General Ordinances Chapter 31), we are not convinced that the ban constitutes a zoning ordinance. To be sure, when the sign control ordinance is considered as a whole, it contains more similarities to a traditional zoning ordinance than when the digital

sign ban is considered in isolation. As with a traditional zoning ordinance, the sign control ordinance divides the City of Madison into "districts," and within those districts, certain types of signs are "allowed as of right" and other types of signs are "prohibited." *Id.* *See, e.g.*, MGO §§ 31.09-11, 31.14(1), (3)(a)1. (providing that identification signs for single family homes may be displayed in most of the Group 1 district, but advertising signs, window signs, and projecting signs are prohibited throughout Group 1). The sign control ordinance also contains at least some regulations aimed at "controlling where a use takes place as opposed to how." *See* MGO §§ 31.14(1), 31.15(2) (providing that awning and canopy signs are not permitted in the Group 1 district, but are permitted in Groups 2 and 3 districts). And, like a traditional zoning ordinance, the sign control ordinance allows for certain kinds of nonconforming signs (albeit not digital image signs) to remain in place, even if they do not conform to the ordinance. *See* MGO § 31.05. Accordingly, it is apparent that there is significant overlap between the sign control ordinance and a traditional zoning ordinance. *See Zwiefelhofer*, 338 Wis. 2d 488, ¶6.

¶47 However, we conclude that the sign control ordinance does not so closely resemble a traditional zoning ordinance that the City had no choice but to use its zoning power to enact the ordinance. As noted above, "[s]imply because an ordinance could be validly enacted as a zoning ordinance does not mean that zoning is necessarily the only avenue available for a local government to enact the regulation." *Id.*, ¶31 n.14.

¶48 Here, unlike a traditional zoning ordinance, the sign control ordinance does not "comprehensively address all possible uses in the geographic area." *See id.*, ¶40. Rather, the ordinance is aimed at just "one particular activity"—the use and operation of signs. *See id.*, ¶56. And, unlike a traditional

zoning ordinance, the sign control ordinance focuses, at least in part, on regulating "how" sign use takes place as opposed to "where it takes place." *See, e.g.*, MGO § 31.04(5)(k)4 (providing restrictions on how a sign may be illuminated); MGO § 31.045(3) (providing that use of "flashing," "projected images," and "laser displays" on signs is prohibited).

¶49   We also note that the purpose of the sign control ordinance differs from the purpose of a traditional zoning ordinance. *See Zwiefelhofer*, 338 Wis. 2d 448, ¶75 (providing that reviewing courts should also compare the purpose of the challenged ordinance "with the purposes of zoning"). Although some case law has conceptualized the purpose of zoning ordinances quite broadly, the *Zwiefelhofer* court explained that "a more specific and analytically helpful formulation of the 'purpose' of zoning … is 'to separate incompatible land uses.'" *Id.*, ¶78. In this regard, the sign control ordinance bears little resemblance to traditional zoning ordinances, in that it does not "separate incompatible land uses," *id.*, rather, it regulates "the type, design, size, location, and maintenance of signs … to further the goals of safety and aesthetics," *see* MGO § 31.02(1).

¶50   In sum, although we think it is likely that the City could have passed the sign control ordinance as a zoning ordinance, we are not persuaded that it had to do so. *See Zwiefelhofer*, 338 Wis. 2d 488, ¶31 (providing that the relevant question is whether the municipality "could adopt the [challenged] [o]rdinance as a non-zoning police power ordinance"); *Wind Point*, 38 Wis. 2d at 9 (explaining that the municipality had the choice to enact a setback ordinance pursuant to its zoning power or its non-zoning police power). In other words, the City's exercise of its police power was not so quintessentially an exercise of zoning authority that the sign control ordinance, and the digital sign ban therein, could be validly enacted only as a zoning ordinance. *See* WIS. STAT. §§ 62.04, 62.11(5) (we

"liberally construe[]" a city's use of its non-zoning police power "[f]or the purpose of giving … cities the largest measure of self-government," so long as the city's choice is "compatible with the constitution and general law"). The City's choice to use its non-zoning police power was a valid choice based on the characteristics of the sign control ordinance, which, as we have explained, differ in meaningful ways from a traditional zoning ordinance.

¶51     Accordingly, for the reasons explained above, we conclude that neither the digital sign ban nor the sign control ordinance are zoning ordinances. Accordingly, Adams' use of the digital features of its billboard do not qualify as legal nonconforming uses under WIS. STAT. § 62.23(7)(h).

**CONCLUSION**

¶52     For the reasons explained above, we affirm the UDC's decision. Although we conclude that the UDC proceeded on an incorrect theory of law when it determined that it did not have authority to consider whether the digital sign ban is a zoning ordinance, the application of the *Zwiefelhofer* framework demonstrates that the ban is not a zoning ordinance. Thus, WIS. STAT. § 62.23(7)(h) does not apply to exempt Adams from complying with the digital sign ban, and for that reason, the zoning administrator did not make a legal error when the zoning administrator issued an official notice requiring Adams to discontinue those features.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.